In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-1388

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ARIC R. BOTHUN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03-CR-83-C-01—**Barbara B. Crabb**, *Chief Judge.*

ARGUED FEBRUARY 16, 2005—DECIDED SEPTEMBER 15, 2005

Before EASTERBROOK, WOOD, and SYKES, *Circuit Judges.*

WOOD, *Circuit Judge.* Aric Bothun got more than he bargained for when he returned to the border checkpoint near El Paso, Texas, to find out why his friend, Jacob Johnson, had not yet passed through. When he reached the border, he found Johnson and then some. Law enforcement agents had stopped Johnson, who was driving Bothun's truck and trailer, and had found 80 grams of a mixture containing methamphetamine, some marijuana, and $32,543 in cash. Both Johnson and Bothun were arrested. After a grand jury indicted Bothun, he pleaded guilty to one count of attempting to possess with the intent to deliver 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846.

In this appeal, Bothun raises two challenges to the way that the district court applied the U.S. Sentencing Guidelines in determining his sentence; he also asserts that his Sixth Amendment rights were violated when his sentence was increased based on judicially found facts, under then-mandatory Guidelines. We find no error in the application of the Guidelines, but Bothun is entitled to a limited remand under *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), for a determination whether the district court would impose a different sentence under the now-advisory guidelines. See *United States v. Booker,* 125 S.Ct. 738 (2005).

## I

Months before Bothun's capture at the border, the Drug Enforcement Administration (DEA) received information from an informant about Bothun's drug activities that eventually led to the DEA's search and seizure of 75.3 grams of methamphetamine from Bothun's mailbox at a Mailboxes Etc. store. After obtaining a search warrant covering both Bothun's Edgerton, Wisconsin, home and two storage units leased to him, the DEA conducted a search and found a wealth of drugs, drug paraphernalia, and guns.

At Bothun's home the DEA agents discovered a .22 caliber rifle and ammunition in a child's bedroom. The agents also found marijuana, pharmaceutical bottles, needles, syringes, mailing labels, and other drug paraphernalia in the home. In the attic above Bothun's workshop, which was attached to his garage, the agents found two rifles and a shotgun, more marijuana and methylenedioxyamphetamine. In the Madison storage unit, the agents found a .40 caliber semi-automatic handgun, a digital scale, 83.8 grams of Oxycodone, 2.02 grams of Hyrcodone, and marijuana. Finally, at Bothun's storage locker in Edgerton, the agents found 7,646 grams of marijuana.

In July 2003, following his arrest in Texas, a grand jury indicted Bothun in a two-count indictment charging him with violations of 21 U.S.C. § 846 for conspiring to possess with intent to distribute more than 50 grams of methamphetamine and attempting to possess with intent to distribute more than 50 grams of methamphetamine. Bothun pleaded guilty to Count Two in October 2003.

In the fall of 2003, while incarcerated at the Dane County Jail awaiting sentencing, Bothun made several calls to his wife, during which he instructed her how to manufacture methamphetamine. Bothun indicated that he would send her a letter with a "recipe" describing how to cook "cake and stuff." He also had his wife speak to another inmate, known as Country, to whom Bothun referred as his "chemist buddy"; Country also offered Ms. Bothun some tips on how to manufacture methamphetamine. Bothun told his wife to "hit" various Wal-Marts each day to purchase the ingredients and slowly build up a stock of cold medicine that could be converted into methamphetamine.

In February 2004, the district court sentenced Bothun to 235 months' imprisonment based on its finding that Bothun was responsible for possessing with intent to distribute at least 3,000 but not more than 10,000 kilograms of marijuana equivalent. (The Drug Equivalency Tables that follow U.S.S.G. § 2D1.1 translate most common drugs into an equivalent amount of marijuana, to facilitate comparisons. Under the table, one gram of methamphetamine equals two kilograms of marijuana; one gram of what is called methamphetamine (actual)— meaning the weight of the pure substance in a mixture—equals 20 kilograms of marijuana.) The court increased his sentence by two levels under U.S.S.G. § 2D1.1(b)(1) because it found that he possessed a gun in connection with a drug offense. The court found that the government had met its burden of showing that the guns found at Bothun's home and storage locker were used in connection with his drug distribution.

Bothun objected to the application of the gun enhancement on the ground that the government had not shown that he actually possessed the weapons or that he was present in the home or storage facilities when the guns were there, but the court was not persuaded. The court also determined that Bothun should not receive a reduction for acceptance of responsibility because of his efforts (along with those of Country) to have his wife continue to manufacture methamphetamine while he was incarcerated.

## II

### A

Bothun's first argument on appeal is that the district court erred in enhancing his sentence by two levels for possession of a weapon in connection with a drug crime, because (he asserts) the evidence did not permit a finding that he had direct or constructive possession of the weapons found in his home. The government never offered physical proof that he had touched any of the guns, nor did it introduce testimonial evidence from its informants that he had used the weapons. Finally, according to Bothun, the government failed to prove that he exercised the type of control over the weapons that would be necessary for a finding of constructive possession. Post-*Booker* we continue to review the court's application of the Sentencing Guidelines *de novo* and its factual findings for clear error. *United States v. Turner*, 400 F.3d 491, 500 (7th Cir. 2005); see also *United States v. Garcia*, 413 F.3d 201, 221-24 (2d Cir. 2005) (explaining why and how the clear error standard of review for factual findings applies even though the ultimate issue is reasonableness).

The application note to § 2D1.1(b)(1) instructs a court to apply this provision "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." § 2D1.1, cmt. n.3. This determination requires

that the government first prove by a preponderance of the evidence that the defendant possessed the gun. *United States v. Corral*, 324 F.3d 866, 872 (7th Cir. 2003). If the government is able to do so, the burden shifts to the defendant to show that it was "clearly improbable" that the weapon was connected to the offense. *Id.* "Actual possession of the firearm need not be established in order to trigger the enhancement. Instead, proof of constructive possession, that is, that the defendant had the power and the intention to exercise dominion or control of the firearm, is sufficient to warrant the enhancement." *Id.* (quoting *United States v. Thomas*, 294 F.3d 899, 906 (7th Cir. 2002)).

The government met its initial burden. We described earlier the many firearms that the agents found when they searched Bothun's home and storage units. Those weapons were found close by drugs and drug paraphernalia. As we have explained before, "guns found in close proximity to drug activity are presumptively connected to that activity." *Corral*, 324 F.3d at 873. Bothun did not introduce evidence compelling the district court to find that it was clearly improbable that the weapons were used in connection with the offense. See, *e.g.*, *United States v. Brack*, 188 F.3d 748, 764 (7th Cir. 1999). We thus find no clear error in the court's decision to apply the firearm enhancement described in § 2D1.1(b)(1).

B

Bothun also challenges his sentence because the court did not give him a reduction for acceptance of responsibility under § 3E1.1. He claims that the court had a rigid "policy not to give acceptance when a defendant commits a new offense during the case." As a result of the purported policy, he accuses the court of refusing to engage in the "context-specific" inquiry required for determining whether a defendant should receive an acceptance of responsibility

reduction under *United States v. Frykholm*, 267 F.3d 604, 611 (7th Cir. 2001). We review the court's decision to deny a reduction in a defendant's sentence for acceptance of responsibility for clear error. *United States v. Hicks*, 368 F.3d 801, 808 (7th Cir. 2004).

The application note to § 3E1.1 explains that a guilty plea is usually evidence that the defendant has accepted responsibility. See § 3E1.1, cmt. n.3. The district court may nevertheless consider a defendant's continued criminal activity in the course of deciding whether he should receive a reduction for acceptance of responsibility, although such activity does not automatically preclude the reduction. See *United States v. McDonald*, 22 F.3d 139, 141 (7th Cir. 1994). As we explained in *McDonald*:

> Although a guilty plea before trial is significant evidence of acceptance of responsibility, it may be outweighed by conduct of the defendant that is inconsistent with such acceptance. . . . A district court may conclude that continued criminal activity, such as use of a controlled substance, is not consistent with acceptance of responsibility.

*Id.* at 144 (internal citation omitted).

In Bothun's case, the court found that "Mr. Bothun had an opportunity to show that he accepted responsibility when he was arrested and jailed, and instead of demonstrating that he understood the seriousness of his conduct at that time and the criminal nature of his conduct, he engaged in continuing criminal conduct about which there's no dispute." Bothun challenged that decision because it was made at the time of sentencing rather than at the time of the plea, but the court explained:

> I'm not making a definitive ruling, but it has been my practice to consider what a defendant did when he was arrested and when he pleaded. And when that

defendant in this case, or in other cases, where he continues to engage in criminal activity, I do not give acceptance of responsibility.

It is somewhat troublesome that the judge said that she had a "practice" of not giving defendants a reduction when they continue to engage in criminal activity, because the Guidelines do not authorize the court to adopt a *per se* rule denying a reduction when a defendant engages in further criminal activity after his plea. Nevertheless, in this case the judge's comments taken as a whole reassure us that she properly weighed all the circumstances before rejecting the adjustment for acceptance of responsibility. In particular, her comments immediately prior to this statement indicate that she made a context-specific inquiry into Bothun's actions. We conclude, therefore, that the court did not apply the Guidelines incorrectly in this instance and that it did not commit clear error in refusing to award Bothun a reduction for acceptance of responsibility.

## III

The court imposed a sentence of 235 months' imprisonment based on its finding that Bothun possessed with intent to distribute the equivalent of 3,000 kilograms of marijuana, but not more than 10,000 kilograms. This drug quantity dictated an offense level of 34. After the court imposed the two-level enhancement under § 2D1.1(b)(1), bringing his offense level up to 36, and it determined that his Criminal History Category was III, it arrived at a Guidelines range of 235 to 293 months. Within that range, the court decided that "[a] sentence at the bottom of the range will be sufficient to reflect the seriousness of [his] conduct and protect the community." Imposing the sentence, the judge commented, "I'm not particularly happy about the length of the sentence that I have to give you, but just for your and [your attorney's] thinking, I believe that

it is my job to apply the guidelines the way they are set up to work and not to try to arrive at a lower sentence by just ignoring the guidelines and the various factors that do contribute to a long sentence."

Although we have found no error in the court's application of the Guidelines, the fact that it did so under the impression that the Guidelines were mandatory and the lack of any indication that the court would have imposed the same sentence under any circumstances put this case in the familiar category of those that require a limited remand under the terms of *Paladino*, 401 F.3d at 483-84. In all other respects, we AFFIRM the judgment of the district court, but while retaining jurisdiction over the appeal, we order a LIMITED REMAND to the district court so that it can advise us whether it is inclined to resentence now that it is clear that the Guidelines are advisory.

A true Copy:

       Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
