**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 5, 2006
Decided June 12, 2006

**Before**

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-3380

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*
 *v.*

JESUS GUTIERREZ-RUIZ,
   *Defendant-Appellant.*

Appeal from the United States
District Court for the Northern
District of Illinois, Eastern Division.

No. 02 CR 924-2

Joan B. Gottschall, *Judge.*

**O R D E R**

   Jesus Gutierrez-Ruiz pled guilty to conspiring to distribute cocaine. At sentencing, the district court judge imposed a two-level enhancement for possessing a dangerous weapon pursuant to United States Sentencing Guideline § 2D1.1(b)(1). Gutierrez-Ruiz contends the application of this enhancement was erroneous, that his Sixth Amendment rights were violated at sentencing, and that the district court failed to explain adequately its reasons for sentencing him to 210 months' imprisonment. We find that § 2D1.1(b)(1) does not improperly shift the burden of proof to the defendant and that the district court's decision to apply the enhancement here was not clearly erroneous. In addition, Gutierrez-Ruiz's Sixth Amendment rights were not violated when the district court made findings of fact at sentencing by a preponderance of the evidence. Finally, the district court

adequately explained its reasons for imposing a 210 month sentence. Therefore, we affirm the judgment of the district court.

## I. BACKGROUND

In September 2002, Federal Bureau of Investigation agents and members of the El Paso County Sheriff's Metro Narcotics Task Force seized approximately 150 kilograms of cocaine that were being transported in a tractor-trailer through El Paso, Texas. The driver of the trailer, Francesco Acevedo, agreed to cooperate with law enforcement agents. A few days later, law enforcement officials and Acevedo traveled to the Chicago area with the cocaine.

Once in Chicago, Acevedo placed a telephone call to Manuel Medina, to whom Acevedo was to deliver the cocaine. Law enforcement officials recorded the call. In the call, Medina instructed Acevedo to meet him at a designated intersection the next day. At the FBI agents' direction, Acevedo drove a van containing the cocaine to the agreed-upon location. There, he met Defendant Gutierrez-Ruiz, Medina, and another man. Pursuant to the instructions he received from the FBI agents, Acevedo told Medina he needed to stay with the cocaine and count it before relinquishing it. Gutierrez-Ruiz eventually entered the van with Acevedo and directed him to drive it into the detached garage behind Gutierrez-Ruiz's residence. Inside the garage, Gutierrez-Ruiz and Acevedo unloaded and counted the 150 kilograms of cocaine. Gutierrez-Ruiz commented that Acevedo was the first person he had encountered who insisted on counting the cocaine.

Law enforcement officials then arrested Gutierrez-Ruiz and conducted a consent search of his residence. Inside his bedroom, underneath his bed, officers found a .40 caliber Glock firearm with a holsteJune 12, 2006 and loaded magazine. In the dining room, officers found additional magazines. Officers also recovered lactose, two scales, a vacuum heat sealer, and boxes of plastic wrap from inside the home.

Gutierrez-Ruiz pled guilty to conspiracy to possess more than five kilograms of cocaine with the intent to distribute it. On August 3, 2005, the district court sentenced him to 210 months' imprisonment.

## II. ANALYSIS

### A.   Gutierrez-Ruiz's receipt of the § 2D1.1(b)(1) enhancement does not warrant reversal.

Gutierrez-Ruiz first contends the district court erred when it imposed the two-level enhancement provided by United States Sentencing Guideline §

2D1.1(b)(1).  This provision states: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels."  Application Note 3 to the provision explains:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons.  The adjustment should be applied if the weapon was present, *unless it is clearly improbable that the weapon would be connected with the offense*.  For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

(Emphasis added.)  Gutierrez-Ruiz contends that: (1) the burden shifting procedure set forth in Application Note 3 to § 2D1.1(b)(1) impermissibly shifts the burden of proof to the defendant, and (2) the imposition of the § 2D1.1(b)(1) enhancement in this case was clearly erroneous.

### 1.    United States Sentencing Guideline § 2D1.1(b)(1) does not improperly shift the burden of proof to the defendant.

Gutierrez-Ruiz maintains that the burden shifting procedure set forth in Application Note 3 to § 2D1.1(b)(1) impermissibly shifts the burden of proof to the defendant.  We review challenges to the district court's application of the Guidelines, such as this one, de novo.  *See United States v. Bothun*, 424 F.3d 582, 586 (7th Cir. 2005).

For the § 2D1.1(b)(1) enhancement to apply, the government bears the burden of proving by a preponderance of the evidence that the defendant possessed a firearm.  *United States v. Bothun*, 424 F.3d 582, 586 (7th Cir. 2005).  If, and only if, the government makes this showing, the burden then shifts to the defendant to demonstrate it was clearly improbable that the defendant possessed the firearm in connection with the offense.  *Id.* (citing § 2D1.1(b)(1), app. n.3).

We have rejected, on multiple occasions, the argument that the burden shifting procedure in § 2D1.1(b)(1) impermissibly shifts the burden of proof to the defendant.  *See United States v. Fudge*, 325 F.3d 910, 922 (7th Cir. 2003) (stating that defendant's claim that § 2D1.1 "improperly shifted the burden of having to establish that the firearm was not part of the conspiracy . . . ignores the long line of cases that have addressed this issue"); *United States v. Bjorkman*, 270 F.3d 482, 492 (7th Cir. 2001) (holding that § 2D1.1 does not unconstitutionally shift the burden to the defendant); *United States v. Durrive*, 902 F.2d 1221 (7th Cir. 1990) (same).  In *Bjorkman*, we explained that the burden shifting procedure in Application Note 3 only sets forth an "exception" to § 2D1.1(b)(1).  270 F.3d at 493.

The government still bears the burden of proving that the defendant possessed a firearm. *Id.* "Once it has done so," we said, "the enhancement may (indeed must) be applied, and it is proper to require the defendant to bear the burden of proving

the exception recognized in Application Note 3 in order to avoid the application of an otherwise properly supported enhancement." *Id.* (citations omitted). *Id.* We also stated that our conclusion was consistent with the language in Application Note 3, due process principles, and with the result reached by the majority of circuits that have addressed this issue. *Id.* This rationale holds true today. As Gutierrez-Ruiz has not provided us with a compelling reason to depart from our precedent, we decline to do so.

### 2. The district court's decision to enhance Gutierrez-Ruiz's sentence pursuant to § 2D1.1(b)(1) was not clearly erroneous.

Gutierrez-Ruiz also contends that even if § 2D1.1(b)(1) is constitutional, the district court erred when it applied the enhancement in this case. We disagree.

To satisfy its burden of proving by a preponderance of the evidence that a defendant possessed a firearm, the government may prove either that the defendant actually possessed a firearm, or that he constructively possessed it. *Bothun*, 424 F.3d at 586. "Constructive possession" means that a defendant had "the power and the intention to exercise dominion or control of the firearm." *Id.* If the government makes this showing, the burden then shifts to the defendant to show it was "clearly improbable" that the weapon would be connected to the offense. *Id.* These are factual determinations, and we will only reverse the district court's factual determinations if they are clearly erroneous. *See United States v. Bothun*, 424 F.3d 582, 586 (7th Cir. 2005); *United States v. Grimm*, 170 F.3d 760, 767 (7th Cir. 1999).

On appeal, Gutierrez-Ruiz contends that the firearm found in his bedroom was not connected to the offense, and, therefore, the application of the enhancement was improper. This argument has some force. It is true that the firearm was found in the bedroom of his house, not inside the garage where he and Acevedo counted the cocaine. It is also true that the district court found there was no evidence that the members of the conspiracy had previously used or possessed guns, and there was evidence that the original plan did not call for delivery of the cocaine to Gutierrez-Ruiz's home.

There is no requirement, however, that the government establish a connection between the firearm and the offense in order for the § 2D1.1(b)(1) enhancement to apply. *United States v. Yanez*, 985 F.2d 371, 378 (7th Cir. 1993) ("Section 2D1.1(b)(1) does not require that the government show a connection between the weapon and the offense") (quoting *United States v. Atterson*, 926 F.2d 649, 663 (7th Cir. 1991)). Instead, we only require that the government demonstrate the defendant possessed the weapon during the offense. *Id.*

Here, law enforcement officials recovered the Glock from inside Gutierrez-Ruiz's home, where they also found lactose, two scales, a vacuum heat sealer, and Seal and Save wrapping. He does not dispute that the Glock belonged to him. This

firearm was present in his home when 150 kilograms of cocaine were delivered, at his direction, to the garage adjacent to his home. Under these circumstances, we cannot say that the district court's finding that Gutierrez-Ruiz possessed the gun was clearly erroneous.

The burden then shifted to Gutierrez-Ruiz to show it was clearly improbable the firearm would be connected to the conspiracy to distribute cocaine for which he was convicted. A firearm need not be found together with drugs to support the § 2D1.1(b)(1) enhancement. *See United States v. Grimm*, 170 F.3d 760 (7th Cir. 1999). As a result, that the gun was found inside his home, rather than in the garage with the drugs, does not alone render it clearly improbable that it would be connected to the conspiracy.

In addition, "guns found in close proximity to drug activity are presumptively connected to that activity." *United States v. Corral*, 324 F.3d 866, 873 (7th Cir. 2003). Here, officials recovered the firearm from Gutierrez-Ruiz's home, where they also recovered lactose, a scale, and a vacuum heat sealer, all items the district court noted "were normally associated with drug dealing." The district court rejected Gutierrez-Ruiz's argument that these items could have had a legitimate purpose, stating "that's an awful lot of presumptively drug-related stuff to have excuses for." Gutierrez-Ruiz did not advance evidence of a purpose he had for possessing the firearm, other than, as the government contended, to protect drugs that were stored, cut, and packaged at his residence as part of a conspiracy to distribute cocaine. We conclude that the district court's finding–that Gutierrez-Ruiz did not meet his burden of showing it was clearly improbable the weapon would be connected to the conspiracy to distribute cocaine–was not clearly erroneous.

## B.   Gutierrez-Ruiz's Sixth Amendment rights were not violated.

Gutierrez-Ruiz also contends his Sixth Amendment rights were violated when the district court judge made findings of fact at sentencing by a preponderance of the evidence that increased his sentence. Allowing judicial factfinding by a preponderance of the evidence does not implicate a defendant's Sixth Amendment rights, however, because the Guidelines are no longer mandatory. *United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005) ("With the guidelines now merely advisory, factfindings that determine the guidelines sentence do not determine the actual sentence, because the sentencing judge is not required to impose the guidelines sentence; and so the Sixth Amendment is not in play."). The district court judge recognized that the Guidelines were advisory when she sentenced Gutierrez-Ruiz, and her findings of fact at sentencing by a preponderance of the evidence did not violate Gutierrez-Ruiz's Sixth Amendment rights.

Gutierrez-Ruiz also maintains that our decisions such as *United States v. Mykytiuk*, 415 F.3d 606 (7th Cir. 2005), have rendered the Guidelines effectively mandatory, contrary to the Supreme Court's *Booker* decision. We disagree. The Supreme Court made clear in *Booker* that the Guidelines are now advisory. 543 U.S. at 245-46. Nothing in our case law since *Booker* has, or could, change that directive. We did hold in *Mykytiuk* that a properly calculated Guidelines sentence is presumptively reasonable. 415 F.3d at 608. But we also made clear that a defendant may rebut that presumption by showing that the Guidelines sentence is unreasonable in the particular circumstances of the case. *See id.* The Guidelines are therefore not mandatory, and a district court judge is not bound to impose the Guidelines-recommended sentence.

**C.     The district court adequately explained its reasons for sentencing Gutierrez-Ruiz to 210 months' imprisonment.**

Gutierrez-Ruiz also argues he should be resentenced because, he contends, the district court did not afford him an opportunity to respond to the court's concerns. He further contends the district court failed to consider all the factors set forth in 18 U.S.C. § 3553(a).

Gutierrez-Ruiz and his wife both testified at his sentencing hearing, following a lengthy hearing largely related to the applicability of the § 2D1.1(b)(1) enhancement. At the hearing, during its consideration of the appropriate sentence to impose, the district court noted that Gutierrez-Ruiz had stated at the time of his arrest that another person was responsible for all that had happened. As a result, the district court expressed concern with its ability to uncover the true facts of the case. Gutierrez-Ruiz's counsel then offered that Gutierrez-Ruiz could take the stand to answer any of the judge's concerns. The court denied this request. Although Gutierrez-Ruiz now maintains that this denial warrants a new sentencing hearing, we do not agree. Gutierrrez-Ruiz received the opportunity to testify at his sentencing hearing and to call witnesses, both of which he did. Although this testimony did not fully satisfy the district court, Gutierrez-Ruiz points to no authority holding that an inability to convince the district court warrants a new hearing.

In addition, although the district court did not specifically refer to § 3553(a), we find it provided an adequate statement of its reasons for imposing a 210 month sentence. A sentencing judge must provide an adequate statement of reasons for the sentence chosen, but little explanation is required when a judge exercises discretion to impose a sentence within the Guidelines range and states she is doing so. *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005). Here, the court heard arguments from both parties at the sentencing hearing before imposing a sentence of 210 months, a sentence at the low end of the Guidelines range. Gutierrez-Ruiz contended he should receive a reduction for playing a minor role in the offense, as

had a co-defendant. He also contended his sentence should be reduced based on his status as a deportable alien, which he argued made his sentence more severe than that of his co-defendants. The district court listened to these arguments, recognized it could impose a sentence outside the Guidelines, but chose not to. The district court reasoned in part that it had been difficult to obtain a true sense of what

happened in this case, in part due to Gutierrez-Ruiz's failure to provide clear information about the events leading to his arrest. We find the district court satisfactorily explained its reasons for imposing the sentence it did.

## III.  CONCLUSION

The judgment of the district court is AFFIRMED.