In the

# United States Court of Appeals

### For the Seventh Circuit

———————

No. 07-1623

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ALOWONLE IDOWU,

*Defendant-Appellant*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 1000—**Ronald A. Guzmán**, *Judge.*

———————

ARGUED DECEMBER 6, 2007—DECIDED APRIL 1, 2008

———————

Before EASTERBROOK, *Chief Judge*, and CUDAHY and
RIPPLE, *Circuit Judges*.

RIPPLE, *Circuit Judge*.  Alowonle Idowu pleaded guilty
to one count of possession with intent to distribute heroin,
in violation of 21 U.S.C. § 841(a)(1). The district court
sentenced him to 87 months' imprisonment. Mr. Idowu
now appeals his sentence. For the reasons set forth in
this opinion, we affirm the judgment of the district court.

**I**

**BACKGROUND**

From 2001 to December 2005, Mr. Idowu owned and operated Jo-Jo Motors, a used-car business. On three occasions in late 2003 and early 2004, Mr. Idowu sold heroin to a confidential informant in the office trailer at Jo-Jo Motors.

In 2005, police conducted a search of the office trailer at Jo-Jo Motors with the consent of Mr. Idowu. The search uncovered 409.3 grams of heroin in a safe. Also during the search, police discovered a .357 magnum Smith & Wesson revolver. The record does not reflect where in the office the revolver was found.

Mr. Idowu later was charged in a four-count indictment. The first three counts charged Mr. Idowu with distributing heroin, in violation of 21 U.S.C. § 841(a)(1); these counts corresponded to the three sales of heroin to the confidential informant. The fourth count charged Mr. Idowu with possession with intent to distribute in excess of 100 grams of heroin, also in violation of 21 U.S.C. § 841(a)(1); this count was based on the heroin discovered in the safe. Mr. Idowu pleaded guilty to count four. According to his plea agreement, the remaining counts were treated as relevant conduct for purposes of sentencing.

In addition to increasing Mr. Idowu's offense level to reflect the sales of heroin to the confidential informant, the presentence report ("PSR") recommended a two-level increase in the offense level under U.S.S.G.

§ 2D1.1(b)(1)[1] for possession of the weapon. Mr. Idowu objected to this increase, but the district court overruled the objection. The district court found that Mr. Idowu possessed the weapon within the meaning of section 2D1.1(b)(1). It stated:

> Well, as I understand this, if the weapon was present, the increase in the offense level applies unless, as the government indicated, it's clearly, let me use the word, unlikely that the weapon was being used in furtherance of the offense.
>
> I don't think its unlikely in this case or clearly improbable. In fact, I think just the opposite it [sic] is true. I think the most reasonable conclusion to be drawn is that the weapon was there in order to enhance the defendant's business of selling drugs. It was found in the same office from which he sold drugs routinely, specifically, on three occasions involved with the confidential informant in this case alone. It was found there with a substantial amount, that is, 409 grams of heroin.
>
> Regardless of whether or not the defendant was in the business of selling automobiles from that office, he was also clearly in the business of selling drugs from that office. The Court is aware of the fact and it is common knowledge that drug dealers, sellers of drugs, often have in their possession firearms to

---

[1]  U.S.S.G. § 2D1.1(a) provides the base offense level for all drug offenses. Section 2D1.1(b) then sets forth the specific offense characteristics that affect the base offense level; section 2D1.1(b)(1) provides: "If a dangerous weapon (including firearm) was possessed, increase by 2 levels."

protect their drugs and their business of selling drugs because, as we all know, they cannot resort to the police for the kind of protection you and I would get from the police without incriminating themselves, so they defend themselves.

The weapon found here was a .357 Magnum Smith & Wesson revolver. That the defendant had constructive possession, at least, of this weapon it seems to me is clear from the evidence. He used the office, he used it routinely to sell drugs from. He was a drug dealer. Drug dealers are known to possess weapons for the purpose of protecti[ng] their drug business and this weapon was found in a place where it would reasonably be if it were being used to protect the drug-selling business.

From all of that, I find that the gun was present as required by the statute and the Guidelines and that the defendant had possession and control over the weapon and that the two-level enhancement applies. So the objection to the calculation of the total offense level in the Presentence Investigation Report is overruled.

Sent. Tr. at 10-11.

Mr. Idowu's offense level of 27 and criminal history category of II yielded a presumptive sentencing range of 87 to 108 months. The court sentenced Mr. Idowu to 87 months' imprisonment.

Mr. Idowu timely appealed his sentence.

## II

## DISCUSSION

Mr. Idowu challenges the increase in his offense level resulting from his possession of a weapon. Mr. Idowu first claims that the Government did not meet its burden of proof with respect to this enhancement. Additionally, Mr. Idowu argues that the standard that governs the application of this enhancement is unconstitutionally vague. We shall evaluate each of these arguments in turn.

### A. Burden of Proof

Mr. Idowu first contends that the Government failed to meet its burden of establishing that the enhancement under section 2D1.1 should apply. This court reviews the district court's application of section 2D1.1(b)(1) for clear error. *United States v. Fudge*, 325 F.3d 910, 922 (7th Cir. 2003).

As noted above, U.S.S.G. § 2D1.1(b)(1) provides: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." The commentary states: "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." U.S.S.G. § 2D1.1 cmt. n.3.

We have explained that the application of the weapon enhancement in section 2D1.1 involves a shifting of burdens among the parties:

> The application note to § 2D1.1(b)(1) instructs a court to apply this provision "if the weapon was present,

unless it is clearly improbable that the weapon was connected with the offense." § 2D1.1, cmt. n.3. This determination requires that the government first prove by a preponderance of the evidence that the defendant possessed the gun. *United States v. Corral*, 324 F.3d 866, 872 (7th Cir. 2003). If the government is able to do so, the burden shifts to the defendant to show that it was "clearly improbable" that the weapon was connected to the offense. *Id.* "Actual possession of the firearm need not be established in order to trigger the enhancement. Instead, proof of constructive possession, that is, that the defendant had the power and the intention to exercise dominion or control of the firearm, is sufficient to warrant the enhancement." *Id.* (quoting *United States v. Thomas*, 294 F.3d 899, 906 (7th Cir. 2002)).

*United States v. Bothun*, 424 F.3d 582, 586 (7th Cir. 2005).

We therefore must determine whether the Government established by a preponderance of the evidence that Mr. Idowu actually or constructively possessed the weapon. We previously have held that a defendant constructively possesses a weapon if he owns the premises on which the weapon and drugs are found and if the weapon is found at the same time as the drugs. For instance, in *Bothun*, the police had conducted a search of Bothun's home as well as storage units he owned. In the house, the officers found a .22 caliber rifle and ammunition in a child's bedroom. In other parts of the home, the agents found marijuana and drug paraphernalia. A search of the storage units revealed other rifles and more marijuana. We held that the Government had

> met its initial burden. We described earlier the many firearms that the agents found when they searched

> Bothun's *home* and storage units. Those weapons
> were found close by drugs and drug paraphernalia. As
> we have explained before, "guns found in close prox-
> imity to drug activity are presumptively connected
> to that activity."

*Bothun*, 424 F.3d at 586 (emphasis added). Thus, in *Bothun*, the Government met its initial burden by showing that the defendant kept a weapon in one room of his home and drugs in another room of the same home.

This case presents circumstances similar to those in *Bothun*. Here, the trailer in which the weapon was found was owned by Mr. Idowu. Not only did the trailer serve as the business office for Mr. Idowu's used-car business, it also was the place from which Mr. Idowu dealt heroin. Indeed, the police uncovered heroin in the trailer at the same time that they uncovered the weapon. The combination of Mr. Idowu's ownership of the trailer and the spacial and temporal proximity of the weapon to the drugs are sufficient under our prior cases to satisfy the Government's burden of establishing constructive possession.

Mr. Idowu, however, believes that the Government failed to meet its initial burden of establishing constructive possession. He argues that the record does not reflect the configuration of the office trailer or where in the trailer the weapon was found. Given this lack of detail, he maintains, it is impossible to discern whether the drugs and the weapon were related sufficiently to apply the section 2D1.1 enhancement. We are not persuaded by this argument. *Bothun* permitted application of the enhancement when drugs and weapons were located in different rooms of the same home from which the defendant ran his drug activities. The confines of an

office trailer certainly present at least as close a physical and functional proximity as the defendant's home in *Bothun*.

Mr. Idowu points to a number of cases from other circuits that, he believes, suggest that the Government has not established the necessary connection between the weapon and the drugs to apply the enhancement. Mr. Idowu first relies upon *United States v. Lucas*, 282 F.3d 414 (6th Cir. 2002), *overruled on other grounds*, *United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002). In *Lucas*, the district court applied the section 2D1.1 enhancement for a gun that was found in the glove compartment of a car that the defendant was driving. The Sixth Circuit determined that the Government had not met its initial burden under section 2D1.1 where it "presented no evidence at the sentencing hearing that Lucas owned the gun, owned the car that he was driving, or even knew that the gun was in the car's glove compartment." *Id.* at 423. Here, however, there is no question that Mr. Idowu owned the trailer in which the gun was found.

Mr. Idowu also points to three other cases in support of his claim. In one of those, *United States v. Highsmith*, 268 F.3d 1141, 1142 (9th Cir. 2001), the Ninth Circuit acknowledged that its holding conflicted with application note 3 to section 2D1.1. This court, however, consistently has employed application note 3. Mr. Idowu also relies on *United States v. McAllister*, 272 F.3d 228 (4th Cir. 2001). In *McAllister*, the Government failed to establish any temporal or spacial connection between the defendant's drug activities and his possession of weapons. *Id.* at 234. Lastly, in *United States v. Johnson*, 260 F.3d 919, 922 (8th Cir. 2001), the Eighth Circuit upheld the decision of the district court not to apply the enhance-

ment where the defendant's possession of the weapon preceded the drug offense by one year. In the present case, by contrast, the weapon and the drugs were found in the same place at the same time.

Finally, Mr. Idowu submits that, even if the Government met its initial burden of establishing constructive possession, the presumption was rebutted because employees of the used-car business also had access to the office trailer and "[i]t was not unusual for employees of this type of office to carry a gun for their self-protection." Appellant's Br. at 12. These facts, however, do not show that it is "clearly improbable" that Mr. Idowu possessed the gun in connection with his drug-related activities.

## B. Constitutionality of "Clearly Improbable" Standard

Mr. Idowu next argues that the "clearly improbable" standard set forth in the application note to section 2D1.1 is unconstitutionally vague. We must reject this contention as well. We explained in *United States v. Brierton*, 165 F.3d 1133 (7th Cir. 1999), that the vagueness doctrine does not apply to the Guidelines:

> The vagueness doctrine holds that a person cannot be held liable for conduct he could not reasonably have been expected to know was a violation of law. "It is well-settled that, as a matter of due process, a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, or is so indefinite that it encourages arbitrary and erratic arrests and convictions is void for vagueness." *Colautti v. Franklin*, 439 U.S. 379, 390 (1979) (internal citations omitted).

Certainly, the vagueness doctrine presumes a law that attempts to proscribe or prescribe conduct. We are mindful, however, that unless First Amendment freedoms are implicated, a vagueness challenge may not rest on an argument that the law is vague in its hypothetical applications, but instead the challenger must show that the law is vague as applied to the facts of the case at hand. *Chapman v. United States*, 500 U.S. 453, 467 (1991).

The Guidelines do not establish the illegality of any conduct. Rather, they are "directives to judges for their guidance in sentencing convicted criminals, not to citizens at large." *United States v. Wivell*, 893 F.2d 156, 160 (8th Cir. 1990). In other words, the Guidelines are designed to assist and limit the discretion of the sentencing judge. *United States v. Macias*, 930 F.2d 567, 571-72 (7th Cir. 1991). It is settled that, with the exception of capital cases, a defendant has no constitutional right to such directives. *Lockett v. Ohio*, 438 U.S. 586, 603 (1978) (finding that "legislatures remain free to decide how much discretion in sentencing should be reposed in the judge or jury in noncapital cases"). As such, the Guidelines are not susceptible to attack under the vagueness doctrine.

*Brierton*, 165 F.3d at 1138-39 (parallel citations omitted).

However, even if the vagueness doctrine applied to the Guidelines, we could not conclude that the standard set forth in application note 3 to section 2D1.1 is unconstitutionally vague. Courts are accustomed to applying the "clear error" standard, which requires that an error be clear or apparent in order to be reversed. *See, e.g., United States v. Dole*, 498 F.3d 604, 608 (7th Cir. 2007) ("Clear error occurs when after reviewing the entire evidence,

we are left with the definite and firm conviction that a mistake has been committed." (internal quotation marks and citations omitted)). Courts also are familiar with applying probabilities—i.e., determining if it is more likely than not that a certain event occurred. Applying the "clearly improbable" standard simply requires judges to meld these two concepts. Thus, judges will find that the defendant has rebutted the presumption under application note 3 when the defendant not only has shown that it is improbable that he possessed the weapon in connection with his drug crime, but also that the improbability is apparent to those assessing the factual situation. *See United States v. Johnson*, 344 F.3d 562, 567 (6th Cir. 2003) ("The *defendant* must show, not that there is a possible innocent explanation, nor even that the gun was 'probably' not connected to the offense, nor yet that it is 'improbable' that the gun was so connected, but, even more, that it was '*clearly* improbable.' (Emphasis added.)"). Because the "clearly improbable" standard combines two standards with which the federal judiciary already is familiar, it is sufficiently clear to permit courts to apply it in a consistent manner.[2]

---

[2] Mr. Idowu also maintains that the district court should have granted him a continuance of the sentencing hearing to garner evidence that there were actual sales of automobiles that took place at Jo-Jo Motors and that it was not simply a front for drug dealing. We do not believe that the district court abused its discretion in denying this request. *See United States v. Rinaldi*, 461 F.3d 922, 928-29 (7th Cir. 2006).

The record reflects that Mr. Idowu entered his guilty plea on August 15, 2006, and that sentencing initially was scheduled for October 24, 2006. On motion of the parties, the sen-

(continued...)

## Conclusion

For the reasons set forth above, we affirm the judgment of the district court.

AFFIRMED

---

[2] (...continued)
tencing was reset for November 11 and then for January 4, 2007. After Mr. Idowu retained new counsel, the hearing was reset for January 24, 2007. By motion of the parties, the sentencing again was reset to February 16, 2007, and then to March 2, 2007. Thus, the sentencing hearing was held more than six months after Mr. Idowu entered his plea and a full three months after he retained new counsel. Requiring counsel to proceed with sentencing after having three months to prepare, and having been granted two continuances, was within the district court's discretion. *See, e.g., United States v. Knorr*, 942 F.2d 1217, 1222 (7th Cir. 1991) (upholding denial of a continuance where new counsel was given only eight days to prepare for the sentencing hearing). Furthermore, for purposes of sentencing Mr. Idowu, the district court essentially assumed that both legal sales of automobiles and illegal sales of drugs occurred at Jo-Jo Motors. *See* Sent. Tr. at 10 ("Regardless of whether or not the defendant was in the business of selling automobiles from that office, he was also clearly in the business of selling drugs from that office. . . ."). Thus, Mr. Idowu was not harmed by the district court's refusal to grant a continuance to present evidence of legitimate car sales.

---