In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-2375

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

RAMON PEREZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 05 CR 189—**Philip P. Simon**, *Judge.*

ARGUED JANUARY 20, 2009—DECIDED SEPTEMBER 9, 2009

Before EASTERBROOK, *Chief Judge*, SYKES, *Circuit Judge,*
and KENDALL, *District Judge.*[*]

KENDALL, *District Judge.* Ramon Perez was indicted
for knowingly possessing with intent to distribute in
excess of 500 grams of cocaine based on a traffic stop
during which the officers recovered a single brick of

_____

[*] Hon. Virginia M. Kendall, District Judge for the Northern
District of Illinois, is sitting by designation.

cocaine weighing 993.9 grams. Perez pleaded guilty to the charged offense and the district court judge sentenced him to 135 months' incarceration based on the cocaine found during the traffic stop and other drugs located at his home that were recovered later that day. Perez claims that the district court judge erred when he increased his sentence for the drugs retrieved from the residence. Because we find that the district court judge correctly included the other drugs as relevant conduct, we affirm.

## I. Background[1]

On November 7, 2005, a Lake County, Indiana police officer stopped Perez for speeding on Interstate 65 ("I-65"). When the officer approached the vehicle he observed Perez in the driver's seat seated next to two small children. The officer gave Perez a warning ticket and told him that he was free to leave. As Perez began walking to his car, the officer asked him if he had any illegal weapons or drugs in the vehicle. Perez denied having any drugs or weapons and agreed to let the officer search the car. A second officer found a brick of cocaine hidden

---

[1] These facts are taken from Perez's guilty plea transcript, his sentencing transcript and his presentence investigation report ("PSR"). In his objections to the PSR and at his sentencing hearing, Perez never contested the facts as set forth in the PSR. Based on the absence of any objection to the facts contained in the PSR, the district court adopted them as "materially accurate."

inside the front passenger's airbag compartment with a net weight of 993.9 grams. The brick of cocaine had been pressed with a device that left a silhouette of a lizard on it. After finding the brick of cocaine, the officers arrested Perez.

The Lake County officers then notified the Illinois State Police Narcotics Unit of the arrest. The ISP officers subsequently went to Perez's home in Cicero, Illinois and received consent to search the home from Perez's wife, Ana Perez. Once inside, the officers retrieved a variety of narcotics including 425.1 net grams of heroin, 985.9 net grams of powder cocaine, 930.0 net grams of marijuana, and 227.7 net grams of methamphetamine. The drugs were mostly found in an east storage room but some were found in the garage. Also in the garage, the officers retrieved two large hydraulic presses suitable for packaging kilograms of cocaine. One of the presses was equipped with a wooden plate with the silhouette of a lizard on it—the exact lizard design pressed onto the brick of cocaine retrieved from Perez's vehicle earlier that day.

In Perez's bedroom, the officers recovered a Smith and Wesson .38 caliber revolver hidden between two mattresses. In the same bedroom, they also found a box of .38 caliber ammunition, three boxes of 9mm ammunition, a box of .25 caliber ammunition and documents indicating that Perez and his wife owned the home.

Ana Perez was subsequently charged in Illinois state court with possession of the narcotics found in the Perez home. At some point during the prosecution, the state court judge suppressed the drugs seized from the

residence finding that the drugs were seized in violation of the Fourth Amendment. The record, however, does not reflect why the judge found the violation.

On November 16, 2005, a grand jury returned a one-count indictment against Perez charging him with possession with intent to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C. § 841(a). The quantity of drugs charged in the indictment reflected the drugs that were seized from Perez's vehicle during the traffic stop and did not include the drugs that were seized at Perez's home in Cicero, Illinois. Perez filed a motion to suppress the cocaine found in his car and after conducting an evidentiary hearing, the district court denied Perez's motion. On December 11, 2006, Perez pleaded guilty to the one-count indictment. The Probation Department prepared a presentence investigation report ("PSR") and calculated Perez's base offense level as 34, based on the quantity of drugs seized from Perez's car and his home. The probation officer also added two levels pursuant to § 2D1.1(b)(1) because a firearm was located where a large amount of drugs were recovered.

Perez filed objections to the PSR and a motion for downward departure. Perez objected to the quantity of drugs attributed to him arguing that the drugs seized from his home should not be counted as relevant conduct because they were not charged in the indictment, that he did not admit to possessing them during his plea colloquy, and that they were seized illegally. Perez also objected to the two-level firearm enhancement arguing that the gun was not connected to the drug offense.

After receiving exhibits and hearing argument, the district court applied the two-level firearm enhancement and calculated the amount of drugs for the charged and relevant conduct to be 5,857.59 kilograms of marijuana (converted) based on both the brick of cocaine recovered during the traffic stop and all of the drugs retrieved from the residence. Based on these findings, the district court calculated Perez's total offense level at 33, resulting in a guideline range of 135 to 168 months imprisonment. Perez also made a request for a sentence below the applicable guideline range based on his lack of criminal history, his work history, and the allegedly uncomfortable conditions of confinement in the county jail where he was held. The district court addressed and rejected each of the grounds stated in support of Perez's request for a non-guideline sentence and sentenced him to 135 months' imprisonment.

## II. Discussion

*A. Relevant Conduct*

Perez argues on appeal that he did not admit to the drugs quantities found in his home during his plea colloquy. At the hearing, however, the government stated:

> And with respect to 404-B evidence, the Government would then establish that later in the day, officers from the Illinois State Police did a knock and talk at the defendant's home in Cicero, and received consent to search the home from the defendant's wife where they found approximately 550 thousand dollars

worth of six different illegal narcotics, and two large hydraulic presses, one of which had a wooden press in the shape of the same lizard that was found on the brick of powder cocaine in the defendant's vehicle.

The district court judge then asked Perez if he had heard what the government said and if he agreed with the government's version of the events. Perez responded: "Yes." Perez was informed that the government would seek to hold him responsible for the entire amount of drugs and he did not challenge the relevant conduct at the time of his change of plea.

In spite of the position he took at his plea hearing, Perez challenges the district court's inclusion of the drugs from the residence as relevant conduct. We review the district court's determination of drug quantities attributable to a defendant at sentencing for clear error. *See United States v. Jones*, 209 F.3d 991, 994-95 (7th Cir. 2000). The district judge's finding that a defendant's relevant conduct includes uncharged drug quantities is a factual determination entitled to our deference and will not be reversed unless we have a "definite and firm conviction that a mistake has been committed." *United States v. Olivas-Ramirez*, 487 F.3d 512, 516 (7th Cir. 2007) (internal citation omitted).

As an initial matter, Perez argues that the drugs seized from his home should not have been included to increase his sentence because they were seized illegally. Generally, the exclusionary rule is inapplicable at the criminal sentencing phase. *See United States v. Brimah*, 214 F.3d 854, 858-59 (7th Cir. 2000) (joining nine other

circuits in holding that "in most circumstances, the exclusionary rule does not bar the introduction of the fruits of illegal searches and seizures during sentencing proceedings."). There is a possibility that the exclusionary rule might apply at sentencing where the police deliberately violated the defendant's constitutional rights for the purpose of acquiring evidence to increase a defendant's prospective sentence. *See Brimah*, 214 F.3d at 858 n. 4.; *but see United States v. Jewel*, 947 F.2d 224, 238 (7th Cir. 1991) (Easterbrook, J., concurring) (commenting on the near impossibility of demonstrating that officers illegally obtained evidence specifically for use in sentencing, and going on to observe that "[i]t is awfully hard to see why motive should matter on either prudential or doctrinal grounds").

The record is devoid of any evidence that the police deliberately violated Perez's Fourth Amendment rights in seizing the drugs from his home with the intent to gather evidence to increase his sentence. Perez has made no attempt to make such a showing either before the district court or on appeal. The district court's refusal to apply the exclusionary rule to evidence that was suppressed in another court against a different defendant was not clear error based on the lack of any evidence to support Perez' bare assertion of misconduct.

Perez next alleges that the drugs seized from his home should not be included as relevant conduct because they were not charged in the indictment and he did not admit to them during his plea hearing. Under § 1B1.3(a)(2) of the Sentencing Guidelines, all acts and omissions

that were "part of the same course of conduct or common scheme or plan as the offense of conviction" are be considered "relevant conduct" for sentencing purposes and such conduct is factored into the Guideline sentencing calculations as if the defendant had been convicted of that conduct. *See United States v. White*, 519 F.3d 342, 347 (7th Cir. 2008); *United States v. Wilson*, 502 F.3d 718, 721-22 (7th Cir. 2007) (uncharged drug quantities can be used to enhance a defendant's sentence).

Recognizing that uncharged drug quantities can add months or years to a defendant's advisory guidelines range, the evidence relied upon by the district court at sentencing to increase a defendant's sentence must bear a "sufficient indicia of reliability." *Id.*; *see also United States v. Ortiz*, 431 F.3d 1035, 1041 (7th Cir. 2005) (vacating sentence because relevant drug conduct not sufficiently related). In assessing whether there is a strong relationship between the unconvicted conduct and the convicted offense, the government must demonstrate that the conduct is connected by at least one common factor such as "common victims, common accomplices, common purpose, or similar *modus operandi.*" *United States v. Bacallao*, 149 F.3d 717, 719 (7th Cir. 1998) (quoting U.S.S.G. § 1B1.3(a)(2), cmt. n. 9(A)).

Because the clear error standard also governs this inquiry, we begin with the district court's specific findings regarding whether the drugs seized from Perez's home were part of the same course of conduct or common scheme as the drugs seized from Perez's vehicle. *See United States v. Acosta*, 85 F.3d 275, 280 (7th Cir.

1996); *United States v. Arroyo*, 406 F.3d 881, 889 (7th Cir. 2005) (district court should state and support its finding that uncharged drug quantities are sufficiently related to the offense of conviction).

Here, the district court made express findings at Perez's sentencing that the drugs seized from his home had the "necessary relation to the convicted offense." *See Bacallao*, 149 F.3d at 719. The district court judge found that the brick of cocaine seized from Perez's vehicle and for which he pleaded guilty had a lizard stamp on it and the drugs seized from his residence were found in close proximity to a drug press with a lizard stamp—the same lizard stamp embossing the cocaine brick seized from Perez's vehicle. The district court specifically stated,

> To me, there is no question that—as the facts are set forth in the presentence report that are not objected to, there was a seizure of—or substantial quantities of narcotics from the [D]efendant's residence that he shared with his wife. Inside the home was a—was a press that matched—that had a certain label on it that matched the packaging material that was used on the cocaine that was found inside the car. It was near in time, and the fact that it is obvious that the Defendant was using his home to package narcotics, and then he was found somewhere away from the home with a large quantity of cocaine packaged in the same way as the materials that were found at the home, suggests to me it was all part of the same course of conduct or common scheme or plan such that the drugs that were seized from the home are relevant to the offense of conviction.

After determining that the distinguishing mark that appeared on the drugs seized from Perez's vehicle matched the mark found on the hydraulic press found inside Perez's residence, which he used to package kilograms of cocaine, the district court did not clearly err in finding that the drugs seized from Perez's home were part of the same common scheme or plan as the offense for which he was convicted. The drugs were therefore properly used to enhance his sentence.

### B. Firearm Enhancement (2D1.1(b)(1))

Perez also challenges his two-level sentencing enhancement pursuant to Guideline § 2D1.1(b)(1) for possession of a firearm in connection with his drug trafficking offense. At sentencing, Perez objected to the enhancement by stating that it was clearly improbable that the gun was used in connection with a drug offense. For the first time on appeal, Perez also objects that the government failed to establish that he had direct or constructive possession of the firearm used to enhance his sentence. Because he did not raise this latter argument during sentencing or in his written objections to the PSR, we review this challenge for plain error, as opposed to clear error. *See United States v. Banks*, 405 F.3d 559, 564 (7th Cir. 2005) (issue not raised in district court is reviewed for plain error).

The relationship (or lack of one) between the weapon and the underlying offense is a factual assessment, so we review the district court's enhancement for clear error. *See United States v. Bothun*, 424 F.3d 582, 586 (7th Cir.

2005). Guideline section § 2D1.1(b)(1) provides for a two-level increase in the base offense level for a narcotics offense "if a dangerous weapon (including a firearm) was possessed." Application Note 3 explains:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, *unless it is clearly improbable that the weapon was connected with the offense*. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

United States Sentencing Commission, *Guidelines Manual*, Section § 2D1.1 cmt. n. 3. (Emphasis added). The government first must prove by a preponderance of the evidence that Perez possessed the gun in a place where drugs were present. *See United States v. Idowu*, 520 F.3d 790, 793 (7th Cir. 2008). The evidence presented to the district court judge at the sentencing hearing established that Perez owned the house where the firearm and the various quantities of drugs were recovered. Once that was established, the burden shifted to Perez to show that it was "clearly improbable" that the gun was connected to the offense. *See id*. The government did not need to prove that Perez had actual possession of the firearm; only that he had constructive possession of the weapon, that is, the power and the intention to exercise dominion or control over the weapon. *See Bothun*, 424 F.3d at 586.

The officers located the .38-caliber Smith and Wesson gun in Perez's bedroom in a home which he owned. In the same home where the gun was found, the officers also found over $550,000 worth of illegal narcotics and the materials to package and distribute the drugs. Perez never challenged ownership of the residence nor did he dispute that the drugs were retrieved from the same location where the gun was recovered. This evidence is sufficient to support the district court's conclusion that Perez had constructive possession of the gun found at his home and that the gun was used in connection with his drug activity. *See Idowu*, 520 F.3d at 794 (enhancement applied when gun was recovered at defendant's office where drugs were stored and sold); *see also Bothun*, 424 F.3d at 586 ("guns found in close proximity to drug activity are presumptively connected to that activity.").

Perez argues that it was clearly improbable that the gun was related to the drug activity because the gun was not recovered near the drugs and was not "easily accessible." Recognizing that it is possible that weapons may be hidden and still be used as part of drug activity, we have upheld § 2D1.1 enhancements when a weapon was recovered in one room of a residence even if it is not the same room where the drugs were located because constructive possession requires only the defendant's ability to exercise control over the weapon, something that can be done without holding, brandishing or firing the gun. *See, e.g., Bothun*, 424 F.3d at 586 (finding gun was presumptively connected to drug activity where gun was found in bedroom of home and drugs were

found in other parts of the home); *United States v. Parra*, 402 F.3d 752, 767 (7th Cir. 2005) (it was not "clearly improbable" that weapon was used in connection with drug offense where gun was found under the mattress in defendant's bedroom and defendant was selling drugs out of her house); *United States v. Grimm*, 170 F.3d 760, 767-68 (7th Cir. 1999) (it was not "clearly improbable" that weapon was used in connection with drug offense even though gun was not found in a place where drugs were present where gun was found in car that had been used to transport shipment of drugs six weeks earlier). We have consistently held that weapons are "recognized tools of the drug trade" and that the possession of a gun can advance the possession and future distribution of narcotics by protecting the drugs or the drug dealer, by serving as a potent warning to those who might contemplate stealing the drugs and by serving as a tool to defend against those who actually undertake to steal the drugs. *United States v. Duran*, 407 F.3d 828, 838 (7th Cir. 2005); *see also e.g., United States v. Castillo*, 406 F.3d 806, 814-15 (7th Cir. 2005). Here, the gun was found in Perez's bedroom between two mattresses and in close proximity to numerous rounds of ammunition while a distribution quantity of drugs was located in other rooms of the same house. Also found in the apartment was a bulletproof vest. The amount of drugs recovered, the kilo presses and the packaging material all indicate that Perez was using his home as a drug trafficking headquarters and as such Perez had an interest in protecting his investment and securing the safety of his product. The gun did not need to be located next to the

drugs to be quickly and easily available for use; Perez could have retrieved the gun at any moment to protect his drug trade.

Lastly, Perez's argument that the gun *may not* have been loaded is immaterial because the purpose of the weapon enhancement is to reflect the increased danger of violence when drug traffickers possess weapons. Even if Perez's gun was unloaded, which is not clear from the record, there was ammunition for the gun located in the same room as the gun. Perez could have easily loaded the gun and used it if he desired to. The mere presence of the gun escalated the danger of Perez's drug operation. *See United States v. Brack*, 188 F.3d 748, 763-64 (7th Cir. 1999) (affirming gun enhancement where weapons were unloaded when found by police); *see also United States v. Mitchell*, 31 F.3d 271, 277-78 (5th Cir. 1994) (affirming gun enhancement even though gun was inoperable). Therefore, the district court did not clearly err in applying the enhancement under § 2D1.1(b)(1).

## C. *Reasonableness*

Lastly, Perez claims that his sentence, which sits at the very bottom of his guideline range, was unreasonable. We review sentences for reasonableness, using an abuse of discretion standard. *See United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008). A sentence is reasonable if the district court gives meaningful consideration to the factors outlined in 18 U.S.C. § 3553(a), including the advisory sentencing guidelines, and arrives at a sentence that is objectively reasonable in light of the statutory

factors and the individual circumstances of the case. *See Shannon*, 518 F.3d at 496 (citing *Gall v. United States*, 128 S.Ct. 586, 596-97 (2007)). The district court need not address every § 3553(a) factor in a checklist fashion; rather, the court must simply give an adequate statement of reasons, consistent with § 3553(a), for finding that the sentence it imposes is appropriate. *See Shannon*, 518 F.3d at 496. A sentence that falls within a properly calculated advisory guideline range is presumed reasonable. *See United States v. Omole*, 523 F.3d 691, 696 (7th Cir. 2008) (citing *Rita v. United States*, 551 U.S. 338, 345-48 (2007)); *see also United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) (adopting a rebuttable presumption of reasonableness for within-guideline sentences).

Here, the sentencing transcript reveals that in sentencing Perez to 135 months, the bottom of his 135-168 month advisory guideline range, the district court sufficiently took into account the factors delineated in § 3553(a). The district court found the nature and circumstances of the offense to be very serious and found that a within guideline sentence would promote respect for the law, provide adequate deterrence for both Perez and others who would contemplate committing a similar crime and would provide adequate punishment. The court also stated that Perez's compliments from former employers, status as a first time offender and preconviction custody situation were not enough to justify a non-guideline sentence. Further, the district court adequately addressed each and every objection to the guideline calculation Perez raised and each and every argument for a non-guideline sentence Perez raised. The record

reveals nothing to support Perez's position that the district court abused its discretion in sentencing him to the low end of the applicable guideline range.

### III. Conclusion

Accordingly, we AFFIRM Perez's sentence.