In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 02-1493 & 02-1734

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FERNANDO CORRAL and FERNANDO LOPEZ,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 00 CR 230—**Rudy Lozano**, *Judge.*

ARGUED FEBRUARY 12, 2003—DECIDED APRIL 1, 2003

Before BAUER, POSNER, and RIPPLE, *Circuit Judges.*

BAUER, *Circuit Judge.* Defendants Fernando Corral and Fernando Lopez pleaded guilty to possession with intent to distribute a quantity of powder cocaine. The district court found Corral responsible for more than six, but less than seven, kilograms of cocaine and sentenced him to eighty months' imprisonment. Lopez was sentenced to sixty months in prison followed by three years of supervised release. Corral appeals the district court's sentence to the extent the court held him responsible for five kilograms of cocaine, which he admitted to possessing during negotiations with a government informant. Lopez, however, appeals the district court's imposition of a sentence en-

hancement under § 2D1.1(b)(1) of the United States Sentencing Guidelines Manual ("USSG") for possession of a handgun. He also appeals the district court's decision not to impose a sentence reduction under USSG § 3B1.2(b) because he was not a "minor participant" in the offense. For the reasons set forth below, we affirm as to both Defendants.

## BACKGROUND

Throughout 1999 and 2000, East Chicago, Indiana, police officer David Zamora worked with a task force from the Drug Enforcement Administration (DEA) on an investigation into drug trafficking by Corral. Officers utilized a confidential informant to conduct several low-quantity purchases of cocaine from Corral, usually in the two to four ounce range. As a result of these transactions, officers directed the source to negotiate a two-kilogram purchase with Corral in March 2000. During those negotiations, which were taped and monitored by police, Corral stated that he had recently purchased five kilograms of cocaine but returned the drugs because they were of poor quality. Corral added that he was expecting a replacement shipment.

Corral arranged to make delivery of one kilogram of cocaine to the informant in December 2000, and police established surveillance of Corral on the day of delivery. During that surveillance, officers witnessed Lopez, whom Zamora recognized as a dealer from nearby Hammond, Indiana, meet with Corral in front of a bar in East Chicago. Officers then followed Lopez to an apartment at 4817 Baring Street, while continuing separate surveillance of Corral.

Some time later, Corral arrived at 4817 Baring Street, entered the residence, and remained inside the home for a short time before leaving. Zamora then directed the

informant to call Corral and ask if Corral had the kilogram of cocaine. Corral responded affirmatively, and officers arrested him shortly thereafter while he was driving in a car with his girlfriend and her young son. The kilogram of cocaine was seized from Corral's girlfriend, who stated that Corral had handed it to her when police approached the car.

After being *Mirandized*, Corral told officers that he had purchased the drugs from a person named "Jose" at the address on Baring Street. Corral pointed out the exact apartment to officers and claimed that "Jose" lived there with Lopez. Officers transported Corral to jail and continued surveillance of the home. Not long after Corral's arrest, two men left the apartment, and police stopped the men, who identified themselves as Mizell Quinones and Jose Herredia. Herredia told police that he lived at 4817 Baring Street with Lopez and gave consent to search the apartment.

When they arrived at the apartment, Herredia revoked his consent to search the home, stating that Lopez was the actual resident of the apartment and would be the one needed to give consent. The agents knocked on the door for five minutes but received no answer. Zamora then obtained a search warrant and entered the apartment. There, they discovered Lopez hiding under clothing in a closet.

Police also found over five pounds of marijuana hidden in a bean bag chair, pieces of plastic pipe consistent with the type used to package the kilogram of cocaine recovered from Corral, approximately $14,000 taped to the bottom of a chair, a small quantity of cocaine hidden in the bathroom, and a gun hidden in the tank of the toilet. The entire apartment was sparsely furnished and appeared to police to be a drug stash house, rather than a normal residence.

Corral and Lopez were charged and indicted with conspiracy to possess with intent to distribute (Count 1) and possession with intent to distribute (Count 2) a quantity of powder cocaine. Both men subsequently pleaded guilty to the second count, a violation of 21 U.S.C. § 841(a)(1), without a plea agreement. The district court sentenced Corral to eighty months' imprisonment, finding him responsible for more than six, but less than seven, kilograms of cocaine.[1] The court arrived at this range by adding three quantities: 1) the various ounce quantities Corral sold to the informant; 2) the negotiated-for two kilograms; and 3) the additional five kilograms Corral admitted to receiving during negotiations with the informant. Corral appeals only the third quantity for which the district court found him responsible, arguing that his statement about the five kilograms amounted to mere puffing and that he never possessed that amount.

The district court sentenced Lopez to sixty months' imprisonment, increased his sentence for possession of the firearm found in the bathroom pursuant to USSG § 2D1.1(b)(1), but refused to apply a sentence reduction under USSG § 3B1.2(b) for being a "minor participant." Lopez bases his appeal on a claim that he did not live at the Baring Street apartment and was only involved in this transaction to serve as a one-time messenger and to allow Corral entry to the apartment to pick up the drugs.

---

[1] The Presentence Investigation Report (PSR) prepared for Corral's sentencing, however, recommended that Corral be held responsible for no less than sixty kilograms of cocaine. The PSR relied upon statements by the police informant, which indicated that Corral had been moving as much as three to five kilograms per month over a long period of time. Because police were unable to document fully this alleged activity, the district court chose to depart from the PSR's recommendation when sentencing Corral.

In support of his argument, Lopez presented testimony at his sentencing hearing from his former landlord and girlfriend, both of whom claimed Lopez lived at an address on 150th Street in Hammond, Indiana, in December 2000. The landlord, however, could not produce a receipt for rent received from Lopez for that month, though he had receipts for previous months. He also stated that Lopez's girlfriend had told him that Lopez no longer lived there and that she had removed his personal belongings. Agent Zamora, Corral, and Herredia each testified that Lopez lived in the apartment on Baring Street. The district court found that Lopez either lived in the apartment or worked out of it for some time prior to his arrest.

## ANALYSIS

### A. Standard of Review

Because Corral and Lopez present only factual challenges, our review of the district court's factual determinations at sentencing is limited to a clearly erroneous standard. *United States v. Buggs*, 904 F.2d 1070, 1078 (7th Cir. 1990). We will not overturn those findings unless we are left with the definite and firm conviction that a mistake has been made. *United States v. Bonilla-Comacho*, 121 F.3d 287, 292 (7th Cir. 1997).

### B. Corral's Relevant Drug Quantity

Corral's only argument is that the district court committed clear error when it determined that he was responsible for an additional five kilograms of cocaine, beyond the negotiated two kilograms. The court's determination was based on a statement made by Corral and recorded by police, while Corral was negotiating a multi-kilogram purchase with the government's informant. During those negotiations, Corral told the informant that he recently

returned five kilograms of cocaine because the quality was poor and that he was expecting a replacement shipment soon. Corral now claims that this statement was merely puffing to bolster his bargaining position by showing his interest in quality control.

By arguing that his statement constituted puffing, however, Corral has conceded that the statement was made as a part of his negotiations for a multi-kilogram purchase of cocaine with the government informant. Application Note 12 to USSG § 2D1.1 allows the sentencing court to consider "[t]ypes and quantities of drugs not specified in the count of conviction" and to approximate those quantities, when appropriate, in order to determine the proper offense level. USSG § 2D1.1, cmt. n.12 (2002). More specifically, Application Note 12 directs the court to consider negotiated quantities from an uncompleted drug transaction, unless "the defendant establishes that he or she did not intend to provide, or was not reasonably capable of providing," the negotiated quantity. *Id.*

We have interpreted this note to mean that negotiated quantities of undelivered drugs can be included so long as there was true negotiation and not idle talk. *Bonilla-Comacho*, 121 F.3d at 291-92; *United States v. Garcia*, 69 F.3d 810, 820 (7th Cir. 1995). If a defendant exhibits the intent and ability to provide multi-kilogram quantities of narcotics, his statements constitute true negotiation and not idle talk. *Bonilla-Comacho*, 121 F.3d at 292.

In Corral's case, nothing in his statement indicates that he was merely bragging to increase his bargaining position. *See id.* ("Nothing in Bonilla's statement indicates that he was bragging about something he could not accomplish or that he was trying to seem like a bigger drug operator than he really was."). Prior to negotiating a multi-kilogram purchase, the informant had purchased several ounces of cocaine from Corral on multiple occa-

sions over several months. The two had established an ongoing, business relationship and Corral did not point to evidence demonstrating that the informant would look elsewhere for a supply of drugs, thereby revealing a need to puff about his prowess as a supplier.

Corral simply made the statement concerning five kilograms in the midst of negotiations for a two kilogram purchase, revealing both his intent and ability to obtain multi-kilogram quantities of cocaine. Initially, it demonstrated that he had obtained large quantities in the past and had the ability to do so in the future. In fact, his ability to obtain a large quantity of drugs is corroborated by the fact that he was arrested in possession of one kilogram.

Additionally, the government's source informed police that Corral had been moving as much as three to five kilograms per month over a long period of time. Because police were not able to document fully the entirety of Corral's trafficking, the district court did not sentence Corral based upon the quantity (no less than 60 kilograms) recommended in his PSR. We note, however, that the district court was free to consider how the informant's statement further corroborated Corral's intent and ability to deal in multi-kilogram quantities of cocaine.

This Court has long relied on a defendant's admissions to hold that defendant responsible for a certain quantity of drugs, and we see no reason why Corral's admission should be treated differently. *See United States v. Spiller*, 261 F.3d 683, 691 (7th Cir. 2001) (holding the defendant responsible for dealing 28,000 grams of crack cocaine as evidenced by handwritten ledgers belonging to the defendant in which he recorded drug sales); *United States v. Joiner*, 183 F.3d 635, 640-41 (7th Cir. 1999) (holding that the district court did not clearly err by relying on the defendants' own statements to determine the drug quantity for which the defendants were responsible); *United States*

*v. Jarrett*, 133 F.3d 519, 530-31 (7th Cir. 1998) (affirming the district court's sentence that relied on undercover buys as well as the defendants' own admissions in recorded conversations regarding drug activities); *United States v. Benitez*, 92 F.3d 528, 538-39 (7th Cir. 1996) (noting the district court's proper reliance on recorded conversations of the defendant to determine the quantity for which she was responsible); *United States v. Ferguson*, 35 F.3d 327, 333 (7th Cir. 1994) (finding no clear error where the district court determined the quantity for which the defendant was responsible based, in part, upon the defendant's own admissions). Accordingly, we find that the district court did not commit clear error by holding Corral responsible for an additional five kilograms of cocaine in determining his proper offense level.

### C. *Lopez's Sentence Enhancement for Possession of a Firearm*

Lopez's first argument is that the district court committed clear error by applying a two-level increase in his sentence pursuant to USSG § 2D1.1(b)(1) because he was in possession of a firearm when arrested. Application Note 3 to § 2D1.1 provides that the enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1, cmt. n.3. The government, therefore, must first prove by a preponderance of the evidence that the defendant possessed the firearm. *United States v. Thomas*, 294 F.3d 899, 905-06 (7th Cir. 2002); *United States v. Harris*, 230 F.3d 1054, 1057 (7th Cir. 2000). "Actual possession of the firearm need not be established in order to trigger the enhancement. Instead, proof of constructive possession, that is, that the defendant had the power and the intention to exercise dominion or control of the firearm, is sufficient to warrant the enhance-

ment." *Thomas*, 294 F.3d at 906 (internal citations omitted). Once possession is established, the burden shifts to the defendant to prove that it was clearly improbable that the firearm was possessed in connection with the offense. *Harris*, 230 F.3d at 1057.

There is no question that Lopez did not physically possess the gun when arrested. He was found hiding under clothing in a closet; the gun was in the toilet tank in the bathroom. The issues before us, therefore, are: 1) whether the government proved that Lopez constructively possessed the gun found in the toilet tank; and 2) whether Lopez showed that it was clearly improbable that the gun was connected to the offense.

### 1. Whether Lopez "possessed" the gun

In *United States v. Singleton*, this Court upheld application of the sentence enhancement when the defendants were arrested in a home they had transformed into a drug distribution center. *United States v. Singleton*, 125 F.3d 1097, 1109-10 (7th Cir. 1997). Inside that home, police recovered a small arsenal of six weapons, ammunition, and drugs hidden strategically throughout. *Id.* We held that, while no gun was found in the hands of the defendants when arrested, the sentence enhancement in § 2D1.1(b)(1) still applied because they constructively possessed the guns. *Id.* We have, likewise, held that the § 2D1.1(b)(1) enhancement can be applied when the defendant knows of weapons stored in a drug stash house. *United States v. Brack*, 188 F.3d 748, 764 (7th Cir. 1999).

Here, the district court made a factual finding that the Baring Street apartment was a stash house. It was sparsely furnished, containing almost no food, few clothes, and little furniture. In fact, the only furniture consisted of a mattress, a small television, a table (upon which police found drug packing material consistent with that

in Corral's possession), and a couple of chairs, one with $14,000 taped to the bottom of it. Police also found over five pounds of marijuana as well as a small quantity of cocaine and a gun hidden in the bathroom. The district court further found that Lopez was a trusted part of this drug operation. He was left in sole possession of the apartment in order to allow Corral entry to pick up the drugs. As the sole occupant of a drug stash house on the day he was arrested, Lopez clearly had the power and intention to exercise dominion and control over the entire apartment. The gun's location in the bathroom does not diminish Lopez's control over it.

Lopez claims that he did not know of the gun's presence and location in the apartment and also asserts that he could not have possessed the gun because he was only in the apartment for the one-time, limited purpose of letting Corral in to pick up the drugs. The district court, however, reasonably chose not to accept Lopez's testimony and further based application of the § 2D1.1(b)(1) enhancement on credible evidence demonstrating that Lopez actually lived in the apartment or worked in the residence on prior occasions. We too reject Lopez's assertion that his presence in the apartment was a one-time deal. Accordingly, we find that Lopez constructively possessed the gun in question.

### 2.  *Whether it was "clearly improbable" the gun was connected to the offense*

The next question is whether it was clearly improbable that the gun was connected to the drug offense. As we have stated, guns found in close proximity to drug activity are presumptively connected to that activity. *United States v. Adams*, 125 F.3d 586, 597 (7th Cir. 1997). In fact, we have held that the § 2D1.1(b)(1) enhancement can be applied when the connection between the gun and the

drugs is only temporal in nature. *United States v. Grimm*, 170 F.3d 760, 768 (7th Cir. 1999). In *United States v. Grimm*, we held that it was not clearly improbable to conclude that a connection existed between a gun found in the defendant's trunk when he was arrested and a drug shipment made with the same car six weeks prior to the arrest. *Id.*

In the case at bar, far more than temporal proximity connects Lopez to the gun found in the bathroom. The apartment was clearly a stash house being used for illicit drug activity. Whether Lopez resided in the apartment or worked there on prior occasions, as the district court found, or whether he was in the apartment for the first time, as he claims, does not affect the connection between the drug activity and the gun. There is no other explanation for the presence of the gun in that apartment than to utilize it in connection with the drug activity taking place inside. Lopez points to nothing that would contradict this strong presumption, and therefore, we find that the district court properly applied the § 2D1.1(b)(1) sentence enhancement. Finally, Lopez's request that the case be remanded for a determination of his eligibility under USSG § 5C1.2 is denied because we affirm the district court's conclusion that Lopez possessed a firearm in connection with the offense.

### D.  Lopez's Role in the Offense

Lopez's second argument is that the district court clearly erred by failing to apply a two-level reduction in his sentence because he was a "minor participant" in the offense. According to USSG § 3B1.2(b), the defendant's offense level may be decreased by two levels if the sentencing court finds him to have been a minor participant in the offense. USSG § 3B1.2(b) (2002). We have held that a minor participant is one who is substantially less culpable

than the average participant. *United States v. Jones*, 55 F.3d 289, 293 (7th Cir. 1995). In making this determination, however, we examine "whether the defendant was a minor participant in the crime for which he was convicted, not whether he was a minor participant in some broader conspiracy that may have surrounded it." *United States v. Brown*, 136 F.3d 1176, 1185-86 (7th Cir. 1998). The burden lies upon the defendant to establish that he was substantially less culpable, though we will apply this sentence reduction infrequently. *Id.* at 1185, 1186.

Lopez argues that his role was minor because he was not a party to the drug transaction and served only as a messenger to let Corral know the drugs were ready for pick up and to admit Corral to the apartment for that purpose. The district court, however, found that Lopez either resided in the Baring Street apartment or worked out of that apartment prior to his arrest. The court also concluded, quite reasonably, that the apartment served primarily as a stash house for the parties' drug business. Lopez cannot claim he was unaware of drug operations within the apartment.

By virtue of agreeing to maintain the stash house and open it to Corral, Lopez's argument that he was substantially less culpable than others must fail. First, he was entrusted with delivery of a large quantity (one kilogram) of cocaine. Second, Lopez was trusted with sole possession of the apartment, which contained a large quantity of marijuana, $14,000, a quantity of cocaine, and a firearm. Finally, he was aware of Corral's purpose for picking up the drugs (to sell them) and Lopez made that possible through his own actions. *See id.* at 1186 (noting that one cannot be a minor participant with respect to one's own actions).

Lopez further argues that his minor role is supported by the fact that he did not stand to profit from the trans-

action. We have held, however, that whether a participant stands to profit from the crime does not reflect upon that person's role within the offense. *Id.* at 1186. Lopez pleaded guilty to possession with intent to distribute cocaine and each of his actions was directed at possessing the cocaine and making distribution possible by giving Corral access to the apartment. For those reasons, we find that the district court did not clearly err by determining that Lopez was not substantially less culpable than others and in denying him a sentence reduction under § 3B1.2(b).

The decision of the district court as to both Corral and Lopez is AFFIRMED.

A true Copy:

     Teste:

                _____
                *Clerk of the United States Court of Appeals for the Seventh Circuit*