# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-4032

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

VICTOR VEGA-MONTANO,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 836—**Charles P. Kocoras**, *Chief Judge.*

———————

ARGUED AUGUST 5, 2003—DECIDED AUGUST 22, 2003

———————

Before EASTERBROOK, ROVNER, and DIANE P. WOOD, *Circuit Judges.*

PER CURIAM. Victor Vega-Montano pleaded guilty to one count of conspiracy to distribute in excess of 500 grams of mixtures containing cocaine. At sentencing, Montano contested the district court's inclusion of three kilograms of cocaine as relevant conduct, arguing that a three-kilogram sale was not reasonably foreseeable to him as part of the conspiracy. In addition, Montano argued that he should be granted a "safety valve" reduction in his offense level because his criminal history category overstated the seriousness of his prior criminal offenses. The district court denied both objections, but granted a two-level reduction in Montano's offense level based on his minor role in the conspiracy and sentenced him to the statutory minimum 60

months' imprisonment. On appeal, Montano raises the same objections he brought before the district court, and we affirm.

## Background

On June 27, 2002, Montano pleaded guilty to one count of conspiracy to distribute in excess of 500 grams of mixtures containing cocaine, a charge that arose from his participation in several conversations leading up to the conspirators' anticipated sale of up to 50 kilograms of cocaine to an undercover task officer. The conspirators' negotiations began on September 8, 2001, when Montano and his co-defendant, Carmelo Lopez, met with an undercover officer to negotiate the sale of 60 kilograms of low quality cocaine. At that meeting, Montano told the officer that he could procure an additional 200 kilograms of cocaine, to be delivered in increments of 20 kilograms. Montano also stated that he could provide 50 kilograms of high quality cocaine, as the officer had requested. Two days after the meeting, Montano, Lopez, and another co-defendant named Carmarino Chavez met with the officer to deliver the initial 50 kilograms of cocaine. The officer provided a car to transport the drugs, but the transaction was not completed because the conspirators demanded that the officer pay for the cocaine at the time of delivery, which he could not do.

On October 1, 2001, Lopez arranged another meeting for the next day to discuss with the officer the sale of 50 kilograms of cocaine. At this meeting, Montano, Lopez, and Chavez told the officer that they would not deliver the cocaine until their supplier was given some of the money for the purchase. In response, the officer stated that he would provide an advance payment for three kilograms of cocaine once he had seen one kilogram of the cocaine. Later that day, Chavez contacted another co-defendant, Nancy Perez, who brought one kilogram of cocaine to a Chicago restau-

rant for the officer's inspection in the presence of Lopez and Montano. Once the officer had inspected the cocaine, he told Perez that he would pay for the initial package of three kilograms of cocaine. Later that day, Montano and the other defendants were arrested by federal agents.

After initially pleading not guilty to the indictment, Montano withdrew his plea and entered into a written plea agreement. In the agreement, the government concluded that the anticipated three-kilogram sale of cocaine to the undercover officer resulted in a base offense level of 28. Montano, however, argued that he should be accountable for only the one kilogram that had actually been delivered, and calculated his base offense level at 26. Both Montano and the government agreed that he should receive a two-level adjustment for his minor participation in the offense and a three-level adjustment for acceptance of responsibility.

After Montano entered his guilty plea, a probation officer prepared a presentence investigation report (PSR). The PSR calculated Montano's base offense level at 28, taking into account three kilograms of cocaine as the relevant drug quantity. The probation officer also accepted the parties' recommendations for a two-level reduction for Montano's minor role in the offense and a three-level reduction for acceptance of responsibility, resulting in a total offense level of 23. In determining Montano's criminal history category, the probation officer took into account a state court conviction for driving under the influence in 1997, for which Montano did not begin serving his term of supervision until 2001. The probation officer assessed one criminal history point for the offense, and two additional criminal history points because the conviction on appeal occurred while Montano was under supervision for his state court conviction. Accordingly, the probation officer determined that Montano's criminal history category was II.

At sentencing, Montano made two objections to the PSR; he argued first that the drug quantity calculation was overstated because it included sales of drugs that were not reasonably foreseeable to him, and second, that the district court erred by failing to grant a "safety valve reduction" and depart from the statutory minimum sentence under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, because his criminal history was overstated. The district court denied both of Montano's objections. Judge Kocoras held Montano responsible for three kilograms of cocaine because the delivery of one kilogram made the deal sufficiently advanced to be foreseeable to all of the conspiracy's participants. Moreover, Judge Kocoras found that Montano's criminal history category "accurately reflects his circumstances," and that Montano's three criminal history points rendered him ineligible for a "safety valve" departure, which requires that the defendant have no more than one criminal history point. Having accepted the PSR's recommendations, the district court determined Montano's sentencing guideline range to be 51 to 63 months. The district court then sentenced Montano to the statutory minimum sentence of 60 months' imprisonment and four years of supervised release.

## Discussion

On appeal, Montano raises the same two arguments that he brought unsuccessfully before the district court at sentencing. First, he contends that the district court erred by holding him accountable for the uncompleted sale of three kilograms of cocaine, rather than the one kilogram that was actually delivered to the undercover officer. Second, Montano argues that the district court improperly failed to grant him a safety valve departure because his criminal history category overstated the seriousness of his prior offenses, taking into account the fact that his instant conviction occurred while he was on supervision for a prior state court sentence. Neither of these arguments has merit.

### 1.   Drug Quantity Calculation

Montano contends that the district court erred by attributing to him three kilograms of cocaine from the uncompleted transaction with the undercover officer, because—given his lack of prior drug dealing and his limited relationship with his conspirators—the completion of the deal was not reasonably foreseeable to him. We review a district court's findings of fact concerning the quantity of drugs for clear error. *United States v. Smith*, 308 F.3d 726, 745 (7th Cir. 2002). For purposes of sentencing, each participant in a drug conspiracy is responsible for all drug transactions reasonably foreseeable to him. *United States v. Thompson*, 286 F.3d 950, 971 (7th Cir. 2002). A co-conspirator may be held liable for reasonably foreseeable but unfinished drug transactions, unless he can prove that he "did not intend to provide, or was not reasonably capable of providing" the drugs. *United States v. Corral*, 324 F.3d 866, 871 (7th Cir. 2003) (quoting U.S.S.G. § 2D1.1, cmt. n.12 (2002)). Further, all conduct by any co-conspirator in furtherance of, and reasonably foreseeable in connection with, the conspiracy is attributable to the defendant as relevant conduct at sentencing. *See* U.S.S.G. § 1B1.3(a)(1)(B); *United States v. Brumfield*, 301 F.3d 724, 733 (7th Cir. 2002).

Montano's lengthy and significant participation in the conspiracy undermines his attempts to minimize his involvement in the conspiracy and argue that he could not have reasonably foreseen the three-kilogram transaction. First, as early as September 8, 2001, Montano and the other conspirators participated in a conversation with the undercover officer concerning an anticipated sale of 50 kilograms of cocaine. At that time, Montano stated that he would be able to acquire up to 200 kilograms of cocaine, and he drove from the meeting to a supplier in an attempt to pick up several kilograms of cocaine for delivery to the officer. Second, even though that initial transaction was never completed, Montano was present one month later at all

meetings where the conspirators and the undercover officer negotiated the three-kilogram deal that was the subject of his conviction. At those meetings, the undercover officer and the conspirators decided that the delivery of one kilogram of cocaine was intended as a showing of good faith toward the completion of the three-kilogram transaction. Moreover, Montano has offered no argument, as required by § 2D1.1, that the discussion of three kilograms was idle talk, or that the conspirators could not acquire three kilograms of cocaine for delivery to the officer. *See Corral*, 324 F.3d at 871. Accordingly, the district court's conclusion that Montano could reasonably foresee the three-kilogram cocaine transaction was not clearly erroneous.

### 2. "Safety Valve" Departure

Montano contends that the district court improperly denied a "safety valve" departure based upon an overstated criminal history. He argues that the district court erroneously assessed two criminal history points when it took into account the fact that the offense on appeal occurred while he was on supervision for a prior state court conviction for driving under the influence. Specifically, Montano asserts that the attorney who represented him on the prior state court charge sought numerous continuances and failed to provide him with an opportunity to plead guilty in a timely fashion. As a result, Montano's conviction for the instant drug offenses occurred while he was on supervision for his previous driving under the influence conviction. The district court, while acknowledging that the four-year delay in accepting his guilty plea was questionable, concluded that it did not have the authority to re-examine the state court proceedings and determine who was at fault for the delay. The district court noted that "[I] do not think I have any discretion to revisit the state hearing and find some condemnation for the failure . . . of the state to move more promptly especially if he tested that high [for blood alcohol

content]. I mean they probably should have," but that Montano's "criminal history category is what it is and . . . accurately reflects his circumstance."

A district court may impose a sentence below the statutory minimum for certain drug offenses if the defendant meets several criteria, *see* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2, including that he not have more than one criminal history point. As long as the district court properly understood the scope of its discretion to grant such a departure, a question that we review *de novo*, *United States v. Phillips*, 239 F.3d 829, 848 (7th Cir. 2001), its decision not to depart is not reviewable, *United States v. Schuh*, 289 F.3d 968, 974 (7th Cir. 2001).

Here, the district court properly understood that it did not have authority to sentence Montano below the statutory minimum because he was not eligible for the "safety valve" departure due to his three criminal history points. The district court could apply the safety valve only if it adjusted Montano's criminal history points, but it had no authority to revisit the state court proceeding. But district courts cannot change the calculations that form the basis of a sentencing range in order to evade the statutory minimum sentences. Many other courts of appeal have agreed that district courts lack discretion to alter a defendant's criminal history points so as to render him eligible for a "safety valve" departure. *See, e.g.*, *United States v. Boddie*, 318 F.3d 491, 495 (3d Cir. 2003); *United States v. Penn*, 282 F.3d 879, 882 (6th Cir. 2002); *United States v. Webb*, 218 F.3d 877, 881 (8th Cir. 2000); *United States v. Owensby*, 188 F.3d 1244, 1247 (10th Cir. 1999); *United States v. Valencia-Andrade*, 72 F.3d 770, 774 (9th Cir. 1995). Accordingly, the district court correctly concluded that it had no discretion to re-examine the validity of Montano's prior criminal conviction and permit a downward departure.

AFFIRMED.

**A true Copy:**

   **Teste:**

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—8-22-03