In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-4169

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

TYRONE VAUGHN,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 08 CR 18—**Robert L. Miller, Jr.,** *Chief Judge*.

ARGUED APRIL 14, 2009—DECIDED NOVEMBER 3, 2009

Before KANNE, ROVNER and WOOD, *Circuit Judges*.

ROVNER, *Circuit Judge*.  A jury convicted Tyrone Vaughn of possession with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1); distribution of marijuana, in violation of 21 U.S.C. § 841(a)(1); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). On appeal, Vaughn contends that the evidence was insufficient to support his conviction

for possession of a firearm in furtherance of a drug traf-
ficking crime. He also contests the district court's deter-
mination on sentencing of the amount of drugs he dealt,
arguing that his own uncorroborated statement to
police officers following his arrest is insufficient to estab-
lish the amount of drugs he bought and sold. We affirm.

## I.

Tyrone Vaughn supplied crack cocaine to Richard Gee
on a regular basis. The two men knew each other through
their work as truck drivers, with Gee occasionally driving
trucks for Vaughn. In November 2007, a federal law
enforcement agent came to Gee's home looking for his
son who was implicated in a criminal case. Gee decided
to clean up his life and set a better example for his son, and
so he told the Alcohol, Tobacco and Firearms ("ATF")
agent, Jason Gore, that he wanted to act as a confidential
informant for the ATF. Gee told Agent Gore about
Vaughn's drug trafficking, and offered other information
about Vaughn. Agent Gore accepted Gee's offer and
began to process the paperwork to document Gee's
anticipated work as a confidential informant.

On November 19, 2007, before Agent Gore finished
processing the paperwork, Gee called to say that Vaughn
had "fronted" him a pound of marijuana.[1] Agent Gore
took custody of the marijuana, but was not pleased with

---

[1] "Fronting" drugs means supplying them without charge
and collecting payment when the recipient sells them and
earns enough money to pay the debt.

this development because Gee was not yet documented and because Agent Gore could not control the situation. Approximately one week later, with the paperwork still pending, Gee called Agent Gore again, this time to report that Vaughn had just fronted him six additional pounds of marijuana. Agent Gore again took custody of the drugs and advised Gee to avoid Vaughn until the paperwork was complete.

By December 2, 2007, Gee was an officially sanctioned confidential informant. He owed Vaughn $650 for the initial one-pound delivery of marijuana, so Agent Gore arranged for Gee to deliver the money while carrying recording devices monitored by law enforcement officials. Gee delivered the money to Vaughn at his home, and as law enforcement listened, the two discussed payment for the additional six pounds. In 2006, Gee had given Vaughn an SKS rifle as payment for a quarter ounce of crack cocaine. Because Vaughn was a felon who was not allowed to own firearms, he had written up a receipt showing that Gee sold the rifle to Vaughn's wife for $300 After paying for the pound of marijuana, Gee asked Vaughn if he could buy back the rifle he had previously given Vaughn. The ATF had supplied Gee with an additional $300 to purchase the gun back. But Vaughn was not interested in the $300. Instead he proposed that if Gee could sell the additional six pounds of marijuana and pay for it in full, Vaughn would give the rifle back to Gee. Agent Gore had also prepared Gee to introduce a "business partner" to Vaughn. In reality, the business partner was an undercover ATF agent who posed as a truck driver by the name of "Wild Bill." Gee mentioned to Vaughn that Wild

Bill had sold the first pound of marijuana and would be enlisted to sell the additional six pounds.

At the urging of the ATF agents, Gee subsequently set up a December 18, 2007 meeting among Gee, Vaughn and Wild Bill. The agents again arranged to record the meeting, which was set to take place in a department store parking lot. They supplied Gee and Wild Bill with $3300, the agreed-upon price for the six pounds of marijuana. Vaughn arrived at the parking lot in a car with three female passengers. He entered Gee's car and Wild Bill paid him $3300. Gee paid Vaughn an additional $200 to settle an old drug debt. Vaughn then engaged Wild Bill in a discussion of his ability to supply more marijuana, as well as ecstasy pills and cocaine. Vaughn then returned to his own car, where he pulled the SKS rifle (wrapped in a blanket) from the trunk. He brought it to Gee's car and placed it in the back seat.

Agent Gore then arranged for Gee and Wild Bill to meet Vaughn at a hotel on February 5, 2008, where Vaughn was arrested by the waiting agents. When Agent Gore searched Vaughn, he found 9.47 grams of crack cocaine in Vaughn's pocket, packaged into four small bags contained in one larger bag. Agent Gore read Vaughn his *Miranda* rights, Vaughn waived his right to remain silent and participated in an interview with the agent. At that interview, Vaughn told Agent Gore that the two trucks that comprised his trucking business were both inoperable, and that his entire income came from selling marijuana, cocaine and guns. Vaughn told Agent Gore that he had dealt cocaine, marijuana and firearms for

most of his life. Apparently seeking to make a deal with Agent Gore, Vaughn offered information about other people in the drug trade, and other purchases and sales he had made, including a forty-pound purchase of marijuana and a quarter-kilogram purchase of crack cocaine. He also told Agent Gore the name of the person who was to supply additional guns to sell to Wild Bill.

In the end, no deal was struck and Vaughn was charged in a four-count indictment as we detailed above. After the government rested its case, Vaughn moved for a judgment of acquittal on the count charging possession of a firearm in furtherance of a drug trafficking crime. He contended that the firearm did not further the crime because Vaughn had already been paid in full for the six pounds of marijuana when Vaughn returned the gun to Gee. The court denied the motion, and denied the renewed motion at the close of evidence. The jury convicted Vaughn on all four counts. He appeals.

## II.

On appeal, Vaughn raises two claims. First, he challenges his conviction for possessing a firearm in furtherance of a drug trafficking crime. According to Vaughn, his possession of the rifle did nothing to further any drug transaction. Second, Vaughn contests the district court's calculation of the amount of drugs at issue in determining a guidelines sentence for Vaughn. Vaughn argues that his own statements about drug quantities he dealt were exaggerations and cannot be used to establish his sentence without corroboration.

**A.**

Vaughn's first challenge is to the sufficiency of the evidence on the charge of possessing a firearm in furtherance of a drug trafficking crime. We will overturn a jury verdict for insufficiency of the evidence only if, after viewing the evidence in the light most favorable to the government, the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt. *United States v. Boisture*, 563 F.3d 295, 298 (7th Cir. 2009); *United States v. Groves*, 470 F.3d 311, 323-24 (7th Cir. 2006). Vaughn asserts that his possession of the rifle did not facilitate the delivery of the six pounds of marijuana in any way. Instead, he maintains, the drug transaction was complete when Wild Bill paid $3300 for the marijuana and Gee paid $200 to Vaughn. Vaughn insists that the subsequent transfer of the rifle did not further the already completed drug transaction. Vaughn contends that the mere presence of a firearm at a drug transaction is not enough to establish a violation of section 924(c). He also cites *United States v. Watson*, 128 S. Ct. 579 (2007), as holding that receiving a gun in barter for drugs is not "use" of a gun in connection with a drug transaction. Vaughn questions whether trading a gun for money after the drug price is paid in full can be said to further a drug trafficking crime when *Watson* holds that a defendant does not violate section 924(c) when he trades a gun for drugs. The government responds that the rifle furthered the drug transaction by providing an incentive or sales commission to Gee for selling the entire six-pound quantity of marijuana and paying for it in full.

Vaughn's portrayal of the transaction construes some of the evidence in a light favorable to Vaughn, and of course, we must take the evidence in the light most favorable to the government at this stage. *See Boisture*, 563 F.3d at 298. Although Vaughn would have us believe that he simply sold the gun back to Gee after the drug transaction was complete, the government's evidence showed that there was no sale. When Gee gave Vaughn $200 on December 18, Gee was simply paying Vaughn an old debt unrelated to the gun or to the six pounds of marijuana. According to the earlier recorded conversations between Vaughn and Gee, when Gee sought to buy the gun back, Vaughn declined. Instead Vaughn offered to give Gee the gun if Gee could sell the entire six pounds and pay for it in full. Knowing that Gee wanted the gun back, Vaughn held onto it and offered it as an incentive or sales commission. Vaughn carried through on his offer when, after Gee paid in full for the six pounds of marijuana, Vaughn gave him the gun.

The government's theory is novel but we think the evidence was sufficient to prove that Vaughn possessed the rifle in furtherance of a drug trafficking crime. The usual scenario for a section 924(c) charge is a drug dealer who keeps a gun close to the drugs or close to the transaction to protect the drugs or the proceeds of the transaction or the dealer himself. *See United States v. Fouse*, 578 F.3d 643, 651 (7th Cir. 2009) (noting the unanimously accepted legal theory that a possessed gun can forward a drug transaction by providing protection for the dealer, the drugs, the proceeds or the dealer's territory); *United States v. Duran*, 407 F.3d 828, 840 (7th Cir. 2005) (same); *United*

*States v. Castillo*, 406 F.3d 806, 815 (7th Cir. 2005) (holding that gun possession may further a drug crime by protecting the drugs and the dealer, and by serving as a warning to those who might contemplate theft of the drugs). Although these are the most common ways for a firearm to further a drug trafficking crime, this is not an exclusive list.

We have interpreted the phrase "in furtherance of" as meaning "furthering, advancing, or helping forward." *Castillo*, 406 F.3d at 814. Vaughn is correct that the mere presence of a firearm at the scene of a drug transaction is not enough. *Castillo*, 406 F.3d at 814-15. Even though experts have repeatedly testified (and we have echoed this testimony many times) that guns are tools of the drug trade, in order to show that a firearm furthered a drug trafficking crime, the government must establish a specific nexus between the particular weapon and the particular drug crime at issue. *Castillo*, 406 F.3d at 815.

> In short, "in furtherance of" means what it says: The Government must present a viable theory as to how the gun furthered the drug . . . distribution (e.g., being available to protect the drugs or drug dealer), and it must present specific, non-theoretical evidence to tie that gun and the drug crime together under that theory. The Fifth Circuit has developed a non-exclusive list of factors to help in determining whether a gun was, in fact, possessed "in furtherance of" the drug crime: "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether

> the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Ceballos-Torres*, 218 F.3d at 414-15. These factors are useful, but, given the fact-intensive nature of the "in furtherance of" inquiry, the weight, if any, these and other factors should be accorded necessarily will vary from case to case.

*Castillo*, 406 F.3d at 815.[2]

The government's theory here is that Vaughn's possession of the rifle advanced the sale of the six pounds of marijuana by providing an incentive to Gee to sell the full quantity for the full price. Vaughn knew that Gee wanted the rifle back and was even willing to pay for its return. Selling all six pounds of the marijuana at full price was more important to Vaughn than the $300 Gee offered to pay for the gun outright, so Vaughn refused to sell the gun. Instead he held onto it and offered it to Gee like Mary Kay might offer a pink Cadillac to a top-selling cosmetics salesperson. As the district court remarked, in the usual section 924(c) case, "weapons are used more as a stick, but there's no reason it couldn't be used as a carrot." R. 64, Tr. at 157. In the same way that a sales commission plays a role in a business transaction, Vaughn used the rifle "to speed the payment and to assure full payment." R. 64, Tr. at 157.

---

[2] The full cite for the Fifth Circuit case cited in *Castillo* is *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000).

The government thus tied the particular weapon to the particular transaction and demonstrated that Vaughn's possession of the rifle helped forward the sale of the six pounds of marijuana. The evidence was thus sufficient to support the conviction.

Vaughn's citation to *Watson* adds nothing to his argument. *Watson* held that a person who trades drugs for a gun does not "use" the gun "during and in relation to . . . [a] drug trafficking crime" within the meaning of section 924(c)(1)(A). 128 S. Ct. at 581. That holding was the natural extension of the Court's earlier rulings in *Smith v. United States*, 508 U.S. 223 (1993), and *Bailey v. United States*, 516 U.S. 137 (1995). All three cases focused on the ordinary and natural meaning of the word "use." In *Smith*, the Court held that a person who trades a firearm for drugs "uses" the firearm during and in relation to a drug trafficking offense under section 924(c)(1). *Smith*, 508 U.S. at 241; *Watson*, 128 S. Ct. at 581. The Court noted that nothing in the statute required that the firearm be used as a weapon; it was sufficient that the defendant used the gun as an item of barter. *Smith*, 508 U.S. at 240. The danger of combining drugs and guns was the same, the Court found, even when the firearm was used as a form of payment because a gun "can be converted instantaneously from currency to cannon." *Smith*, 508 U.S. at 240. As in *Smith*, the defendant here used the firearm as currency, in this instance to pay a commission to a drug salesman for successfully selling the drugs for full price and delivering full payment.

In *Watson*, the Court considered the inverse of the question presented in *Smith*, whether a person who receives a firearm in trade for drugs "uses" the firearm in relation to a drug trafficking crime. The Court concluded that the ordinary understanding of the word "use" did not include receiving a firearm in a barter transaction. *Watson*, 128 S. Ct. at 583. The Court noted that a boy who trades an apple to get a granola bar uses the apple, but no one would say that the boy *used* the granola bar in the transaction. *Id*. The first person who possesses the firearm is the one who "uses" it in the trade. *Watson*, 128 S. Ct. at 584. In *Bailey*, the Court held that the word "use" in section 924(c) required evidence of active employment of the firearm, rejecting the government's position that possessing a firearm near the scene of a drug trafficking crime was sufficient under the statute. *Bailey*, 516 U.S. at 143. After *Bailey*, Congress modified section 924(c)(1) to prohibit possession of a firearm in furtherance of a drug trafficking crime. *Watson*, 128 S. Ct. at 582 n.3. The government charged Vaughn under that amendment, alleging that he "knowingly possessed a firearm in furtherance of a drug trafficking crime." R. 9, at 3. Certainly under *Smith*, the government could have charged Vaughn with *using* the firearm during and in relation to a drug trafficking crime rather than *possessing* it in furtherance of a drug trafficking crime. As we noted above, the possession charge is a somewhat creative use of the statute. Vaughn, though, does not argue about the difference between possessing the rifle and using the rifle. Instead he confined his argument to the "in furtherance" language,

to whether the rifle furthered the sale of the six pounds of marijuana. In this instance, we think the distinction makes little difference because Vaughn both held onto the rifle, i.e., possessed it, and then used it to pay a commission, and so both the possession and the use furthered the sale. The possession itself furthered the marijuana sale because Vaughn knew that Gee wanted the rifle back and declined to give it to him until Gee could sell and then pay for the entire six pounds. Thus, the evidence was sufficient to sustain the conviction.

**B.**

Vaughn also argued that his sentence should be vacated because it was premised, in part, on a drug quantity that is not supported by the record. In particular, Vaughn argues that he should be held accountable only for the seven pounds of marijuana and 9.47 grams of crack cocaine recovered from him. In assessing Vaughn's relevant conduct for guidelines purposes, the district court credited Vaughn's own admissions to ATF agents that (1) the 9.47 grams of crack cocaine found in his pocket was all that remained of a quarter-kilogram quantity he purchased from Tia Williams in December 2007; (2) he had purchased forty pounds of marijuana from Eddie Abrams in late 2007; and (3) he was prepared to obtain sixty more pounds of marijuana from Abrams if "Wild Bill" could advance him $7500. We review the district court's factual findings regarding drug quantities and whether uncharged offenses are relevant conduct for clear error. *United States*

*v. Delatorre*, 406 F.3d 863, 866 (7th Cir. 2005); *United States v. Parra*, 402 F.3d 752, 762-63 (7th Cir. 2005).

Vaughn posits that his uncorroborated admissions are insufficient to support the court's findings. Vaughn claims that he was lying to the agents when he stated he had recently purchased a quarter of a kilogram of crack cocaine and forty pounds of marijuana. He exaggerated his purchases, he asserts, because he wanted to appear to be a valuable cooperating witness who could assist the government in prosecuting other dealers, in the hopes of reducing the charges against himself. He also lied about being able to obtain sixty additional pounds for Wild Bill, he claims, because he was simply trying to steal $7500 from Wild Bill and never had access to that much marijuana. In further efforts to boost his value as an informant, Vaughn also admitted to the agents that he had been a drug dealer most of his adult life. The court found that it was more likely than not that Vaughn was being truthful at the time he made those admissions. The court also found that the transactions proved at trial corroborated Vaughn's access to larger quantities of drugs. The court noted that the quarter-kilogram quantity of crack cocaine and the forty pounds of marijuana placed Vaughn at an offense level of 34. Using the guidelines conversion tables, the court found that a quarter-kilogram of crack cocaine is equivalent to 5000 kilograms of marijuana. Forty pounds of marijuana added 18.144 kilograms to that total. Sixty pounds of marijuana added another 27.2 kilograms. Under the guidelines, a range of 3,000 to 10,000 kilograms of marijuana results in a base offense level of 34. The crack cocaine

alone would have placed Vaughn in this range and the court's findings regarding the forty- and sixty-pound quantities of marijuana did not affect the result.

The district court rightly rejected Vaughn's contention that his own admissions were insufficient to establish the drug quantity for relevant conduct calculations. Although an uncorroborated confession is insufficient to prove guilt beyond a reasonable doubt, we have stated many times that uncorroborated evidence may support fact-findings for sentencing purposes under the more lenient preponderance-of-the-evidence standard. *Compare Wong Sun v. United States*, 371 U.S. 471, 488-89 (1963) ("It is a settled principle of the administration of criminal justice in the federal courts that a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused."), *with United States v. Johnson*, 489 F.3d 794, 797 (7th Cir. 2007) (in sentencing, the district court may credit testimony that is totally uncorroborated and comes from an admitted liar, convicted felon, or large scale drug-dealing, paid government informant). Vaughn is certainly not the first defendant to argue that he was lying to a confidential informant or government agent when he bragged about his past purchases of controlled substances and his ability to make future purchases. *See United States v. Corral*, 324 F.3d 866, 871 (7th Cir. 2003) (in calculating drug amounts for relevant conduct, court may rely on defendant's admissions to a confidential informant about past and future purchases uttered during delivery of drugs and bona fide negotiations for future sales). In *Corral*, we noted that we have "long relied on a

defendant's admissions to hold that defendant responsible for a certain quantity of drugs." 324 F.3d at 871-72 (collecting cases). Vaughn's admissions regarding the quarter-kilogram of crack cocaine and the forty pounds of marijuana, together with his delivery of seven pounds of marijuana and the recovery of 9.47 grams of crack cocaine, were sufficient to support the district court's relevant conduct findings. As for the sixty pounds that Vaughn promised to obtain for Wild Bill, the guidelines expressly allow a court to include as relevant conduct negotiated quantities of undelivered drugs so long as there was true negotiation and not idle talk. *Corral*, 324 F.3d at 871; U.S.S.G. § 2D1.1, Comment 12. Given Vaughn's completed deliveries, which confirmed his access to substantial quantities of marijuana, the court did not err in concluding that Vaughn actually intended to sell an additional sixty pounds of marijuana and had the ability to obtain that amount. In any event, as we noted above, the additional sixty pounds did not change the applicable offense level, and so there would be no prejudice if the court erred in including this amount.

AFFIRMED.