In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3078

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALDUFF DOODY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:09-CR-26 RLM—**Robert L. Miller, Jr.**, *Judge.*

ARGUED JANUARY 12, 2010—DECIDED APRIL 2, 2010

Before POSNER, FLAUM, and WILLIAMS, *Circuit Judges*.

FLAUM, *Circuit Judge*. The defendant, Alduff Doody, was charged with possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Unlike the defendants most commonly charged under § 924(c), Doody did not possess the firearm for protection. Instead, he accepted the gun as collateral to secure a drug debt. Thus, he argues, his conduct did not violate § 924(c). Because Doody took possession of a firearm in manner that facilitated a drug transaction, we affirm.

### I. Background

On March 11, 2009, Doody was indicted by a grand jury on one count of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) and one count of distributing cocaine in violation of 21 U.S.C. § 841(a)(1). Although he originally pleaded not guilty to both counts, on May 20, 2009, Doody agreed to plead guilty to Count 2 of the indictment, distributing a controlled substance. The parties also agreed that Count 1 would be submitted to the district court in a bench trial on stipulated facts. Doody waived his right to appeal, except for the right to appeal an adverse decision as to guilt or innocence as a result of the bench trial on Count 1. On May 27, 2009, the district court approved the plea agreement.

According to the stipulated facts, Doody distributed powder cocaine from about April 2008 through February 2009 in Marshall County, Indiana. He distributed a little over a kilogram of powder cocaine during that ten-month period. On August 5, 2008 and February 24, 2009, Doody distributed cocaine to two confidential informants working with the Bureau of Alcohol, Tobacco, and Firearms. In a separate transaction in the fall of 2008, Doody distributed one-sixteenth of an ounce of cocaine to Gil Rodriguez, who did not at that time have the money to pay for it. Rodriguez instead offered his nine-millimeter pistol as collateral to secure the drug debt. Doody took possession of the firearm and held it for four or five days until Rodriguez paid him $60 for the cocaine. Doody then returned the firearm to Rodriguez. When agents

searched Doody's residence on February 24, 2009, they found nine-millimeter ammunition and a nine-millimeter magazine.

The district court conducted the bench trial on June 8, 2009. Based exclusively on the stipulated facts, the district court denied Doody's motion for an acquittal and found Doody guilty of Count 1 of the indictment. On August 20, 2009, the district court sentenced Doody to 60 months of imprisonment on Count 1 of the indictment and 51 months of imprisonment on Count 2 of the indictment, with the terms to run consecutively. Doody appeals his conviction on Count 1.

## II. Analysis

We review a claim that a district court's verdict after a bench trial is unsupported by the evidence with the same deferential standard that applies to a jury verdict: we reverse only if, after viewing the evidence in the light most favorable to the government, we determine that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *See United States v. Arthur*, 582 F.3d 713, 716-17 (7th Cir. 2009). We review de novo the trial court's ruling on a Rule 29 motion for a judgment of acquittal, asking whether evidence exists from which any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *United States v. Hach*, 162 F.3d 937, 942 (7th Cir. 1998). Here, because the facts were stipulated before trial, these questions are the same, and turn on the legal question of whether a defendant who accepts a

firearm as collateral to secure a drug debt can be said to possess that firearm "in furtherance" of a drug trafficking crime and thus be convicted under 18 U.S.C. § 924(c).

Section 924(c) provides for a mandatory minimum sentence of five years for any person "who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who in furtherance of any such crime, possesses a firearm . . . ." 18 U.S.C. § 924(c)(1)(A) (2010). The "uses" prong of § 924(c) has been the subject of a line of Supreme Court cases, culminating in a case addressing the receipt of a firearm in exchange for drugs. First, in *Smith v. United States*, 508 U.S. 223 (1993), the Supreme Court held that a person who trades his firearm for drugs "uses" the firearm "during and in relation to . . . [a] drug trafficking crime." Two years later, in *Bailey v. United States*, 516 U.S. 137 (1995), the Court suggested it would follow a more restrictive interpretation of "use," holding that a defendant who had a loaded firearm locked in a bag in the trunk of his car and a defendant who had an unloaded pistol locked in a trunk in her bedroom closet did not "use" the firearms during and in relation to their drug-dealing activities because they did not "actively employ" them. *Id.* at 147-51. Finally, in *Watson v. United States*, 552 U.S. 74 (2004), a unanimous Court held that a defendant who receives a gun as payment for drugs does not "use" a gun for the purposes of § 924(c). *Id.* at 83. By the time the Court decided *Watson*, Congress had responded to *Bailey* by amending § 924(c) to its present form, adding the prohibition on possessing a firearm in furtherance of a drug trafficking crime. Because the defendant in

*Watson* was charged under only the "use" prong of § 924(c), the Court reserved the question of whether he could have been found guilty of possessing a gun "in furtherance of" his drug trafficking. *Id.*

Since *Watson*, six courts of appeals have considered whether a defendant who receives a firearm in exchange for drugs possesses that firearm in furtherance of a drug trafficking crime, and all six have decided or assumed without deciding that such a defendant does violate § 924(c). *See United States v. Mahan*, 586 F.3d 1185, 1188 (9th Cir. 2009) ("a defendant who accepts firearms in exchange for drugs possesses the firearms 'in furtherance of' a drug trafficking offense"); *United States v. Sterling*, 555 F.3d 452, 458 (5th Cir. 2009) (assuming without deciding that bartering drugs for guns constitutes "possession in furtherance" of a drug trafficking offense); *United States v. Dolliver*, 228 Fed. Appx. 2, 3 (1st Cir. 2007) (holding that trading drugs for a gun violates the "in furtherance of" prong of § 924(c)); *United States v. Luke-Sanchez*, 483 F.3d 703, 706 (10th Cir. 2007) (same); *United States v. Frederick*, 406 F.3d 754, 764 (6th Cir. 2005) (same).

We have not previously addressed this question, but we have considered the "in furtherance of" prong of § 924(c) in other situations. In *United States v. Castillo*, 406 F.3d 806 (7th Cir. 2005), we considered what might be the archetypical possession of a gun in furtherance of drug trafficking: possessing a gun to protect the drugs and the dealer and to serve as a warning to those who might attempt to steal the drugs. *Id.* at 815. We interpreted the phrase "in furtherance of" to mean "furthering,

advancing, or helping forward." *Id.* at 814. *Castillo* places the burden on the government to "present a viable theory as to how the gun furthered the [drug distribution] . . . and it must present specific, non-theoretical evidence to tie that gun and the drug crime together under that theory." *Id.* at 815. Applying this standard, we concluded that the government had established that the defendant had possessed a gun for protection during a drug offense and thus violated § 924(c). *Id.* at 815-16.

In *United States v. Vaughn*, 585 F.3d 1024 (7th Cir. 2009), we applied the standard articulated in *Castillo* to a more unusual scenario. In *Vaughn*, the defendant had previously acquired a rifle from a man named Gee, who often bought drugs from him. Gee later became a confidential informant and asked if he could buy back the rifle. Vaughn declined to sell him the rifle, but said he would give the rifle back to Gee if Gee sold six pounds of marijuana for him. Gee agreed, and Vaughn gave him the rifle after Gee paid him for the marijuana. *Id.* at 1027. We held that by offering the rifle as an incentive for selling marijuana, Vaughn possessed it in furtherance of a drug trafficking crime. *Id.* at 1029. We acknowledged that this was a "novel" use of § 924(c) but held that Vaughn's possession of the rifle "helped forward" the sale of six pounds of marijuana by acting as an incentive to sell the marijuana, speeding payment for the marijuana, and assuring the full payment of the marijuana's purchase price. *Id.* at 1029-30.

*Castillo* and *Vaughn* lead us to the same interpretation of § 924(c) as our sister circuits: when a defendant

receives a gun for drugs, he takes possession of the firearm in a way that "further[s], advance[s], or help[s] forward" the distribution of drugs. *Castillo*, 406 F.3d at 814. As the Sixth Circuit observed, "If the defendant did not accept possession of the gun, and instead insisted on being paid fully in cash for his drugs, some drug sales—and therefore some drug trafficking crimes—would not take place." *Frederick*, 406 F.3d at 764. The same is true when the defendant holds the gun only as collateral, rather than taking permanent ownership of it. Without the gun serving as security for the drug debt, some drug dealers would refuse to extend credit to their customers, and some drug transactions would not take place. Receiving a gun in exchange for drugs—whether as payment or collateral—facilitates the drug transaction.

Doody makes two closely related arguments against this interpretation of § 924(c). First, he relies on the holding in *Watson* that mere "receipt" is not "use" and on 18 U.S.C. §§ 922(g) & (h), both of which make it a crime to "receive" a firearm or ammunition under certain circumstances. This, Doody suggests, means that Congress must use the word "receipt," not "possession," to criminalize accepting a gun for drugs. Second, he argues that he did not possess the pistol "during and in relation to" the drug trafficking crime, because he did not possess the gun during the drug distribution or possessed it only momentarily (the record is silent on whether the gun or the contraband was handed over first), after which he possessed the gun only "'in furtherance of' a secured debt."

Doody's reliance on *Watson* is misplaced. *Watson* rested on the plain meaning of the word "use"—one who receives something in a bartering transaction is not ordinarily said to use the object he received in relation to trade. 552 U.S. at 79. Here, Doody "possessed" the pistol in the ordinary meaning of the word: he held it and controlled it. Whatever the merits in another context of Doody's argument that Congress intended to distinguish "possession" from "receipt," the distinction makes no difference here. After receiving the gun, Doody possessed it. And unless Doody had been willing to take possession of the gun in exchange for drugs, the transaction could not have taken place. Thus, Doody's eventual possession furthered his drug trafficking crime.

Finally, we must address Doody's argument that he did not violate § 924(c) because he did not take possession of the gun until after he distributed the drugs. This argument rests on a misreading of the text of § 924(c). The mandatory minimum applies to a defendant "*who*, during and in relation to any . . . drug trafficking crime . . . , uses or carries a firearm, *or who*, in furtherance of any such crime, possesses a firearm . . . ." 18 U.S.C. § 924(c)(1)(A) (2010) (emphasis added). The repetition of the subject "who" in this parallel construction makes clear that "during and in relation to" applies only to those defendants accused of using or carrying a firearm. For those who are charged with possessing a firearm, the only limit is that the possession be "in furtherance of" the drug trafficking crime. Thus, Doody cannot rely on the fact that his possession of the firearm may not have come until after the drugs were distributed. Even if it did not

come until after the drugs were distributed, Doody's possession of the pistol made the drug transaction possible, and thus furthered it, and § 924(c) requires no more.

### III.  Conclusion

The district court's judgment of conviction is AFFIRMED.