In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-2193

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHRISTOPHER R. GATES,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin, Madison Division.
No. 3:15-cr-00126-JDP-1 — **James D. Peterson**, *Judge.*

ARGUED DECEMBER 13, 2016 — DECIDED JANUARY 4, 2017

Before POSNER, KANNE, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant pleaded guilty to
being a felon in possession of a firearm, namely a Glock 22
.40 caliber pistol with a capacity of more than 15 rounds;
such possession is a felony, see 18 U.S.C. § 922(g)(1), punish-
able by a fine and also by imprisonment for a maximum of
10 years (there is no minimum term of imprisonment). 18
U.S.C. § 924(a)(2). The judge increased the defendant's
guidelines range by four levels, pursuant to U.S.S.G.

§ 2K2.1(b)(6)(B), for possessing the firearm in connection with another felony offense, namely the distribution of an illegal drug. The result was a guideline range of 57 to 71 months. But the judge sentenced the defendant to only 36 months, which was within the guideline range only if the four-level enhancement and the gun's high-capacity magazine were ignored; the judge thought the shorter sentence appropriate.

We don't think the judge was correct to rule that the defendant had possessed the gun in connection with two other alleged felony offenses, both being drug transactions. The first transaction involved a person who, being short of cash to pay for the synthetic marijuana that he'd just bought from the defendant, pawned his Glock (the Glock we mentioned earlier) to the defendant pending payment for the marijuana. It's not known when Gates expected to be paid. What we do know is that a few days after the transaction he sold the gun, to someone who happened to be a confidential informant, for $300, allegedly with his marijuana customer's consent to that method of clearing the customer's debt; the $300 adequately compensated Gates for the marijuana that he had sold the customer.

Gates had sequestered the Glock in his garage during the brief interim before he sold it; he had not used the gun or even touched it except for carrying it to, and later (when he had a customer) from, the garage. The Glock was thus as "dangerous" in the defendant's "use" of it as if the pawn had instead been a Patek Philippe watch. The government argues that the gun had facilitated the sale of the drug, but we don't know whether, had the defendant not had the gun, he would have obtained some substitute pawn from the

buyer of the drugs from him, or if not would have trusted the buyer to pay him eventually—for he hadn't asked the buyer to give him a gun as collateral. Indeed he hadn't asked for *any* collateral; it was the buyer's idea to offer collateral in lieu of immediate payment, and also for the collateral to be a gun. There is no evidence that had it not been for the collateral the defendant would have cancelled his transaction with the buyer. It is common for drug buyers to be short of cash and therefore take some time before they can pay for the drugs they buy.

The government cites our decision in *United States v. Doody*, 600 F.3d 752, 755 (7th Cir. 2010), where we said that "receiving a gun in exchange for drugs—whether as payment or collateral—facilitates the drug transaction." But that was not said (as the government mistakenly asserts) in regard to the four-level guideline enhancement of U.S.S.G. § 2K2.1(b)(6)(B); it was said in relation to 18 U.S.C. § 924(c), which establishes mandatory minimum sentences for using or carrying a gun in relation to a crime of violence or a drug trafficking crime—and neither "use" nor "carry" accurately describes the defendant's relation to the Glock. For there is as we said no evidence that he demanded collateral, let alone collateral in the form of a gun, from the purchaser of synthetic marijuana from him.

Missing also from the case is evidence that the synthetic marijuana that the defendant sold was at the time of the sale a "scheduled" (that is, an illegal) drug. And if not, then the gun had no possible relation to a drug crime. Later, it's true, the defendant sold the gun, to the confidential informant, and so pleased was the defendant with the sale that he gave the confidential informant a gift (worth $40) of approximate-

ly 16 grams of scheduled synthetic marijuana. The gift, fol-
lowing as it did the sale of the gun, did not facilitate that
sale; and bear in mind that the defendant was punished only
for alleged improper use of a gun, and not for selling (let
alone giving away) illegal drugs.

Although the sentence imposed was within the guideline
range for the offense of being a felon in possession of a gun,
the judge's remarks at sentencing suggest that his real con-
cern was that the gun had been used in an illegal-drug
transaction. But it hadn't been; the defendant hadn't used
the gun to facilitate either the first transaction, which so far
as appears was legal because the synthetic marijuana that he
sold had not yet been "scheduled" (i.e., classified illegal), or
the second transaction. And while the defendant did plead
guilty to being a felon in possession of a firearm, his sen-
tence was based not on that crime but instead on his having
"used" a gun in connection with an illegal drug transaction,
namely the first transaction, the sale to the owner of the gun.
But the defendant had not *used* the gun; nor is there evidence
that the sale was of an illegal drug, as distinguished from
unscheduled synthetic marijuana. Nor is there the slightest
indication that the gun pawned to him by the first buyer (the
buyer of the unscheduled synthetic marijuana) facilitated his
gift of the scheduled synthetic marijuana to the second buyer
(the buyer of the gun).

The government argues that even if the judge made mis-
takes in sentencing they were harmless. The judge did say
"it seems to me that if I were to relieve [the defendant] from
the effect of the enhancements, we end up with a sentence
that's just about right." But he also said that "the sentence …
reflects the seriousness of the offense. … It was a dangerous

weapon that was possessed and it was possessed in connection with the dealing of drugs." As far as the defendant was concerned, the gun was not "dangerous," because he held it as collateral, with no intention of using it as a weapon. We can't see the legal significance of the gun, taken as collateral, secreted in the garage, and then sold.

The judgment of the district court is therefore vacated and the case remanded to that court for further proceedings consistent with this opinion.